State of Iowa v. Dan Donavan, Appellant.

**Burglary with intent to commit larceny:** EVIDENCE: OTHER CRIMES.
1  In a prosecution for burglary with intent to commit larceny, evidence tending to show a conspiracy to break and enter other buildings for that purpose and that defendant was a party thereto, is admissible.

**Evidence:** STATEMENTS OF A CONFEDERATE. On a prosecution for
2  burglary where there was evidence of a conspiracy, statements of a confederate regarding the stolen property, not made in the presence of defendant, while not binding upon him, are, under the circumstances, held to be without prejudice.

**Evidence:** RELEVANCY. Every act in furtherance of an unlawful purpose, is relevant as against every one engaged therein.
3

**Instructions:** POSSESSION OF STOLEN PROPERTY. An instruction that
4  possession of goods recently stolen is not *prima facie* proof of

breaking and entering, but if it appears that the building was broken and entered and the theft accomplished at that time by means thereof, proof of possession unexplained will warrant a conviction, is not open to the objection that there was no explanation of the honest possession of the stolen property.

**Argument:** MISCONDUCT. It is error for a prosecuting attorney to repeat in argument a statement which the court has ruled improper, but in the instant case the departure from legitimate argument was not so flagrant as to warrant a reversal.

*Appeal from Muscatine District Court.*— HON. D. V. JACK-SON, Judge.

WEDNESDAY, OCTOBER 19, 1904.

THE defendant was convicted of breaking and entering a dwelling house in the daytime with intent to commit larceny therein. He appeals.— *Affirmed.*

*L. J. Horan,* for appellant.

*Chas. W. Mullan, Attorney General,* and *Lawrence De Graff, Assistant Attorney General,* for the State.

SHERWIN, J.— The defendant was separately indicted and tried for breaking and entering the dwelling house of George J. Nietzel, in the city of Muscatine, on the 30th day of July, 1903, the crime having been committed between one and three o'clock in the afternoon.

The defendant and two others, Flynmore and Walsh, had been together in the city during at least a part of the preceding day, engaged in cleaning cisterns or in looking for work of that kind. The night of the 29th was spent by Flynmore and Walsh in a box car, with the cistern-cleaning apparatus, and by the defendant in the city jail. The three met early the next morning, and after visiting a saloon they started out again soliciting work, and during the forenoon cleaned at least one cistern. At noon they

repaired to a saloon, where they remained together some time, conversing among themselves and with others, and drinking beer. When they left this saloon they seemed to have separated, and to have looked for work singly, but they were not long apart, for they were seen together again at about three o'clock, and during this interval of time the house in question and two other houses in the immediate neighborhood were broken and entered, and larceny committed in each. Somewhere about four o'clock of the same afternoon the three met near the railroad track in South Muscatine, and immediately went into the high grass and weeds near by, where they were hidden from view except when one of them stood up to survey their position and surroundings. They were soon thereafter arrested at this rendezvous and taken to the jail. Upon search being made of their persons, property stolen from the Nietzel house was found in the possession of the defendant and Flynmore, and later in the day other property stolen from the same house, together with property stolen from the other two houses, was found in a bundle hidden under the railroad ties within a few feet of the place where the arrest was made. There was also evidence tending to show that this defendant carried some kind of a bundle or package partly concealed under his coat when he was going to the rendezvous, and that he was at the same time trying to conceal his identity by covering his face and by assuming a false attitude.

The State was permitted to show that the property found under the ties, other than that taken from the Nietzel house, was also stolen, and of this ruling the defendant complains. 1. EVIDENCE: other crimes. While it is the general rule that the State may not prove other distinct offenses for the purpose of fastening upon the defendant the particular crime charged, there are well-settled exceptions to this rule, and we think it the almost universal holding that whatever tends directly to prove the crime charged may properly be produced in evidence, " though it tends also to prove " the

defendant guilty of some other crime. 1 Bishop on Criminal Procedure, sections 1120-1129; *Commonwealth v. Choate,* 105 Mass. 458; *State v. Brady,* 100 Iowa, 191. 1 Elliott on Evi. 175. And another breaking may be so connected with the one for which the defendant is being tried as to be admissible for the purpose of showing a corrupt combination and the defendant's participation therein. 2 Bishop on Criminal Procedure, section 153. Such evidence has also been held admissible for the purpose of completing the chain of circumstantial evidence necessary to establish guilt in respect to the act charged. Wharton on Criminal Law, section 650; *Mason v. State,* 42 Ala. 532. The evidence received tended to show a conspiracy to break and enter buildings for the purpose of committing larceny therein, and that the defendant was a party thereto, and that, although he may not have actually done the breaking himself, he was in possession of the stolen goods, not only those stolen from the particular house in question, but those stolen from the other houses as well. We think there was no error in admitting this evidence. See, also, *People v. Lopez,* 59 Cal. 362.

Complaint is made of the admission of testimony that Walsh offered for sale some knives which he described as Rogers ware, and this when the defendant was not present.

2. EVIDENCE: statements of a confederate. His statements as to the ware and the reason why it was offered for sale would not bind the defendant, it is true, but it could not have been prejudicial to him, because the evidence shows that ware of the same description was found in the package under the ties, and that Walsh and Flynmore went directly from the house where it was offered to the rendezvous where they met the defendant, and where the ware was found and the three arrested. As none of the knives and forks were found in the immediate possession of any of the parties when arrested, it is evidence that they were the same ones found under the ties in the joint possession of all.

A chisel was found with the other property which

Flynmore had borrowed the day before of a blacksmith in Muscatine, and one of the windows of Nietzel's house was forced open and entrance made through same. This evidence was clearly admissible under the rule that every act done in furtherance of a common unlawful purpose is relevant as against every one engaged therein. Stephen's Digest of Evidence, 10.

*3. EVIDENCE: relevancy.*

The tenth instruction given by the court was in the following language: "Possession of goods recently stolen does not in itself create presumption or amount to *prima facie* proof that the possessor is guilty of breaking and entering the building in which the goods were kept; but if other evidence in the case shows beyond a reasonable doubt that the building was broken and entered by some one, that the theft of the goods was accomplished at the time and by means of the breaking and entering, proof of possession unexplained, or in the absence of circumstances raising a reasonable doubt as to whether the possession of the goods had been acquired otherwise than by the crime charged, is sufficient to warrant a conviction." The defendant contends that it implies that there was no explanation of the honest possession of the stolen property, and hence was erroneous. Such is not the language or import of the instructions, however, and it is not open to the criticism made.

*4. INSTRUCTIONS: possession of stolen property.*

Instruction 11 was the usual one given as to the right of the jury to judge the credibility of witnesses and the weight to be given their testimony, and was correct.

Complaint is made of the action of the county attorney in his closing argument to the jury. He referred to the fact that the defendant had not used Walsh as a witness, and said that the defendant had brought Flynmore from Ft. Madison at the expense of the county while Walsh was in the county jail. Objection was made to the statement, which was sustained, but it was repeated, and another objection thereto sustained. It needs no argu-

*5. ARGUMENT: misconduct.*

ment to sustain the proposition that the attorney should not have repeated the statement after the court had ruled that it was improper, but we cannot presume that the jury considered statements which the court had said were improper and not to be considered, and, the statement in itself not being in our judgment a flagrant departure from legitimate argument on the record, we shall not reverse on account thereof.

We think the verdict fully sustained by the evidence, and the judgment is *affirmed.*