## Rutland v. Commonwealth.

(Decided October 6, 1914.)

### Appeal from Christian Circuit Court.

1. Conspiracy—Sufficiency of Indictment.—It is not indispensable that all the conspirators be jointly indicted, although that is the usual and convenient course.
2. Indictment—Requisites and sufficiency of Accusation—Subject Matter of Allegations—Matters of Defense in General.—The court is not inclined to favor hypertechnical criticisms of indictments.
3. Witnesses—Competency—Husband and Wife.—The wife of one co-conspirator is a competent witness against her husband's co-conspirator upon trial under an indictment against him alone.
4. Witnesses—Credibility—Impeachment—Contradiction and Corroboration—Right to Coneradict Testimony of One's Own Witness.—Where the witness states a fact prejudicial to the party calling him, the latter may contradict the witness by showing that he has made statements prior to the trial inconsistent with his testimony.

JAMES BREATHITT and BREATHITT, ALLENSWORTH & BREATHITT for appellant.

JAMES GARNETT, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

A. V. Rutland was convicted in the Christian Circuit Court of the common law offense of conspiring to cause another to be falsely accused of a crime for the purpose of extorting money. The jury found him guilty and fixed his punishment at a fine of three hundred and fifty-eight dollars; and from the judgment entered upon the verdict he appeals.

It appears from the evidence that appellant, Rutland, lives at Empire in Christian County, where he is engaged in the business of operating a coal mine. One Robert Fields was employed by appellant in his store.

Callie Fields, wife of Robert Fields, was about sixteen years of age at the time of the incidents herein mentioned.

Callie Fields testified that some time before Christmas, 1913, she was in appellant's store, and that appellant called her into that part of the building which was used as an office, and there tried to induce her to accuse Dr. S. H. Williams of making improper proposals to her, promising her a suit and a hat if she would do so, and also saying that if she would make this accusation, he would make some "easy money" for her and her husband. She testified that she declined to be a party to such a proceeding, and informed Rutland that Dr. Williams had not been guilty of any misconduct toward her.

She further testified that some time thereafter her husband took her to Madisonville to the office of an attorney, and that arrangements were there made to file a suit against Dr. Williams; but the witness denies that she fully understood the exact nature of the proposed action.

A Mrs. Butler testified that she was in appellant's store and saw Callie Fields when appellant called her into his office; that she heard appellant ask Callie Fields to swear something, and heard him promise her if she would swear it, he would make her and her husband some money; and that she heard Callie Fields reply, "I cannot, for he did not."

Dr. Williams lived at Crofton near Empire, as did also the mother of Callie Fields; and the latter had visited her mother from time to time and received medical treatment from Dr. Lovan, another physician at Crofton. She had also, on one occasion, gotten some medicine from Dr. Williams.

Dr. Williams testified that after dark on November 10, 1913, appellant called him over the telephone and urged his immediate presence at Empire upon a matter of importance; that he went to Empire that night, taking Dr. Lovan with him. The latter lived just across the street from Dr. Williams, and they were close friends. When Williams and Lovan arrived at appellant's house, Lovan remained in the buggy while Williams went in. Appellant took Williams to his bedroom and informed him that Robert Fields was asserting that he, Williams, had made improper proposals to his wife, and that he was going to bring suit against Williams for damages.

After some talk, Williams suggested that appellant send for Fields and his wife who live about one hundred yards distant, so that he might talk with them, but appellant declined to do this. He suggested, indirectly, however, that the matter might be compromised, saying that he, himself, had once had a case in which the parties wanted $1,200 and he had settled it for $375. Williams declined to accept the proferred suggestion of compromise, and returned home.

Dr. Lovan testified that he had been at Empire that same afternoon, and appellant had told him that Fields was going to sue Williams for the alienation of his wife's affections, but that he believed it could be settled for five hundred dollars. He also testified that he went with Dr. Williams that night to appellant's house; and that after they returned to Crofton, appellant called him over the telephone and told him Fields had learned that they had been to see appellant and that he was very angry; and seemingly, by indirection, advising that the matter be promptly settled.

Dr. Williams, however, declined to make any proffers of settlement; and on November 28, 1913, an action was instituted in the Christian Circuit Court, by Robert Fields as next friend of Callie Fields, against Dr. Williams, for five thousand dollars, damages for assault.

Appellant admits that he telephoned to an attorney who lived some thirty miles distant, to come to his place, on the day he was employed by Fields to bring this suit; but says that the reason he sent for the attorney was that he wanted to place in his hands for collection accounts against three coal miners who had been working for him, but had left owing him.

In the light of the other facts shown, it is significant that Fields knew this attorney was coming to Empire, and when the attorney got off the train, Fields, after making inquiry as to the identity of the attorney, introduced himself, and said he wanted to talk with him about a matter before he left Empire.

In answer to questions asked by counsel for defendant, Dr. Williams testified that on November 14, 1913, Callie Fields while at the home of her mother in Crofton, had made an affidavit acquitting him of any charge of improper conduct toward her, and stating that appellant, Rutland, had tried to induce her to make a charge of that character against him.

From a second affidavit by Callie Fields, introduced by defendant, it seems that the existence of the affidavit of November 14, 1913, became known to appellant and Robert Fields after the institution of the suit against Dr. Williams; and Fields then took his wife to the office of the attorney who had brought the suit for him, taking a note from appellant to this attorney, the contents of which are unknown. The attorney testified that he read the note and threw it in the waste-paper basket, and that he had no recollection of its contents.

Callie Fields then made another affidavit, this time asserting that her former affidavit made at her mother's was procured by over-persuasion, and re-affirming the charges made against Dr. Williams in the petition filed against him by her husband as her next friend. This was on January 16, 1914. On the trial she testified that she did not understand the contents of this affidavit when she was sworn to it.

On February 27, 1914, she made another affidavit, re-affirming the first affidavit, asserting the innocence of Dr. Williams, and requesting the dismissal of the action which had been instituted by her husband as her next friend, which was filed in that case; and the case was dismissed by the court. This prosecution followed.

1. Appellant first contends that the demurrer to the indictment should have been sustained because the indictment does not charge that Robert Fields, the co-conspirator, was acting corruptly; appellant's theory being that although he himself may have known the charge against Williams to be false, unless Robert Fields also knew it to be false, and the indictment so charged, it is insufficient.

It may be conceded that had appellant and Fields been jointly indicted, this criticism would have had some weight; but as the indictment states that the charge against Williams was false, it is assumed that Fields had knowledge of its falsity, nothing to the contrary appearing in the indictment, and the indictment being against appellant alone. If in point of fact Fields did not know that the charge was false and believed it to be true, that might be defensive matter, but not a valid objection to the sufficiency of the indictment.

The court is not inclined to favor hypercritical objections to indictments; the trend of the best modern thought is not along the lines of rigid adherence to rules

not based upon a reasonable interpretation of the aims and spirit of present-day criminal procedure. As the court said in Overstreet v. Commonwealth, 147 Ky., 471:

"An indictment should contain the name of the party charged; the offense charged; the county in which it was committed; and a statement of the acts constituting the offense in ordinary and concise language. * * * If, when considered as a whole, the charge is stated with sufficient clearness and certainty to enable the accused to know what he is charged with and to enable the court to pronounce judgment, no error in form of expression will make the indictment bad."

2. Appellant also contends that both of the conspirators should have been jointly indicted. It is said in 8 Cyc., 659, that the usual and convenient course is to include all the conspirators in a joint indictment, but that an indictment will ordinarily lie against one only of the alleged parties unless there be some reason peculiar to such indictment plainly making a several proceeding improper.

We see nothing in this case exempting it from this rule and nothing necessitating the joint indictment of Rutland and Fields. In fact, under the circumstances, a separate indictment of appellant was practically indispensable to his conviction, and, if guilty, he should not be permitted to escape punishment on a technicality.

3. Objection is also made to certain testimony. It appears that the witness Layle on Saturday testified that Fields had told him that he had it in writing that if the suit brought by Fields against Dr. Williams went against them, Rutland would pay the costs. The defendant moved the court to exclude this, and the court overruled the motion.

The Commonwealth closed its case on Saturday and defendant moved the court to instruct the jury to find him not guilty; this motion the court took under consideration until the following Monday, when it was overruled.

The Commonwealth then asked permission to recall the witness Layle, to which defendant objected, and the court overruled the objection. The witness was then asked as to the date of the conversation he had previously testified about, but was not able to say whether it was before the filing of the suit against Williams. All of the testimony of this witness was then excluded from

the jury by the court, both what he had testified on Saturday and what he had testified on Monday.

Appellant complains of prejudicial error, for the reason that the testimony given on Saturday remained with the jury until Monday before it was excluded; but we do not think that this was error sufficient to justify the reversal of the conviction. The language in which the court withdrew from the jury the testimony of this witness was such that we cannot believe they did not understand it, and there was nothing in the testimony withdrawn so damaging that its remaining with the jury from Saturday to Monday before being excluded would have induced a verdict of guilty in the absence of evidence of guilt.

4. It is also insisted by appellant that Mrs. Fields was incompetent to testify upon this prosecution; it being claimed that she was in effect testifying against her husband.

If appellant and Fields had been jointly indicted and the indictment dismissed as to Fields, his wife upon the authority of Ray v. Commonwealth, 12 Bush, 397, would have been competent to testify against appellant. Fields not being indicted she was a competent witness.

But appellant contends that had Fields been indicted and the indictment dismissed as to him, two guilty persons being necessary to constitute a conspiracy, appellant could not have been convicted. However, dismissal of an indictment is not equivalent to a verdict of not guilty and judgment discharging the defendant. We are aware that there are a few cases holding that where two are indicted for conspiracy and the indictment is dismissed as to one, the other cannot be convicted; but we are not inclined to follow them, for they are not in harmony with the spirit of modern criminal procedure.

5. Objection is made that the Commonwealth was permitted to impeach its own witness, Fields, by proof of prior statements contradictory to his testimony upon the trial.

Fields had sworn before the grand jury in making the indictment, practically the same state of facts as testified to by his wife; but on the trial he changed his testimony, answered all questions propounded by the Commonwealth in the negative, and on cross-examination, supported defendant in every particular. He testified

that his wife told both Rutland and himself that Dr. Williams had insulted her.

The Commonwealth then asked him if he did not in the county court room, in the presence of his wife and others, just before he went before the grand jury, state that Rutland was the only person who ever informed him that his wife had been insulted by Dr. Williams; and he denied having made the statement.

The Commonwealth then proved by Fields' wife that he did make the statement inquired about, in the presence of herself, the sheriff and others.

The rule is that proof of prior statements contradicting the testimony of a party's own witness is admissible only when the witness has given affirmative testimony prejudicial to the party by whom he was called. Duke v. Davis, 125 Ky., 313, 101 S. W., 390, 30 R., 1348. It was, therefore, proper to permit the Commonwealth to impeach Fields by proof of contradictory statements. Civil Code, Sec. 596.

The evidence in the case is in sharp conflict; so much so that a jury might entertain reasonable doubts as to the guilt of appellant; but this jury seems to have had none, and as there is sufficient evidence to support the verdict, and it appears that appellant had a fair trial, we are not inclined to disturb the judgment appealed from.

Affirmed.