SMYTHE NEON SIGN COMPANY, Appellee, v. LOCAL UNION No. 405 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS OF Cedar Rapids, Iowa, et al., Appellants.

No. 44437.

February 7, 1939.

Frank C. Byers and Albert P. Jenkins, for appellants.

James E. Patterson and Floyd Philbrick, for appellee.

Stiger, J.—Will Smythe is sole owner of Smythe Neon Sign Company. He was in the sign business in Cedar Rapids many years and in the spring of 1937 added the manufacturing of neon signs to his sign business. He and his employees are members of the sign painters union which is affiliated with the American Federation of Labor. Local Union Number 405 of the International Brotherhood of Electrical Workers of Cedar Rapids, Iowa, and Cedar Rapids Building Trades Council, defendants, are also affiliated with the American Federation of Labor.

Plaintiff alleges in his petition that the defendants entered into a conspiracy to coerce and intimidate Ginsberg's Jewelry and Loan Company, Frank H. Drew Sporting Goods Company, and Burt Shoe Store, with which business concerns in Cedar Rapids, Iowa, plaintiff had contracts for neon signs; that defendants stated to them that plaintiff was "unfair" to union labor and did not comply with union labor requirements and that because of such intimidation the contract with Frank H. Drew Sporting Goods Company was "about to be canceled" and the other contracts were canceled; that the defendants started boycotting plaintiff's signs and refused to connect them to the power circuit for plaintiff's customers. Plaintiff further alleged

that in pursuance of said conspiracy, defendants caused and directed certain individuals to call in troop fashion at the above places of business where plaintiff was in the act of erecting neon signs or was about to erect neon signs to harass, intimidate, coerce, scare and frighten the owners of said places of business for the purpose of harming and ruining plaintiff's business and causing him financial loss and loss of prestige and that defendants intercepted, molested, interfered with and intimidated plaintiff's customers; that defendants traversed the city and have published and declared everywhere possible that plaintiff was unfair to union·labor and announced that they were boycotting the plaintiff's business and asked the people and owners of business in general to refuse to purchase neon signs from the plaintiff.

The trial court found that defendants had wrongfully established and maintained a secondary boycott against the plaintiff and his business and enjoined the defendants from molesting the plaintiff in the transaction of his business and from stating orally or by any other mode of communication that plaintiff was unfair to organized labor and from doing any other act or employing any means to cause any person or corporation to withhold patronage from the plaintiff and in general restrained defendants as prayed in plaintiff's petition.

This suit has its origin in a dispute between the plaintiff and defendant electrical workers over the right to hang neon signs and the right to do the electrical work involved in the manufacture and maintenance of such ˙ signs and connecting them with the power circuit. With reference to this controversy the main contention of the defendant electrical workers is that they have the right to wire the signs, install electrical equipment in the signs, connect them to the power circuit, service the sign after it is erected and that all such electrical work belongs to said Local Union No. 405.

In his attempt to prove that defendants are guilty of a secondary boycott, plaintiff proved that the defendants placed plaintiff on the unfair list, told plaintiff and several customers and prospective customers of the plaintiff that he was unfair and further stated to said persons and to plaintiff that they would not connect neon signs manufactured by plaintiff to the power circuit or do any work on such signs, that the defendants were entitled to do all electrical work connected with said signs and

further told plaintiff that they would do all that they could to get the business for the members of the defendant union. Plaintiff made no attempt to prove his other accusations against defendants.

A neon sign is a piece of electrical equipment or electrical apparatus. Inside the sign there are wiring and transformers that transforms the electricity from low voltage into "as high as 12,000 volts or better", and the necessary high tension wires to the neon tubing which illuminates the sign. The evidence shows there is danger of fire and injury to workmen from these signs.

Plaintiff and defendants belong to the American Federation of Labor. The Constitution of the International Brotherhood of Electrical Workers provides that its jurisdiction shall include:

"(b) The operation, inspection and supervision of primary electrical equipment, apparatus, appliances or devices by which the power known as electricity is generated, utilized and controlled."

Section 5 of the Constitution provides that electrical workers shall have jurisdiction over "all electrical signs".

Ordinances of the city of Cedar Rapids required permits to do electrical work and a master electrician's license for engaging in the business of supervising or installing electrical wiring and connecting to apparatus which is connected to an electric light and power circuit. An ordinance pertaining to the erection of signs provides that permits will not be granted for electric signs until the electrical permit has been taken out and the sign inspected and.approved by the electrical inspector. No permit under the electrical ordinance was ever issued to the Smythe Neon Sign Company or Will Smythe and it further appears that neither plaintiff nor his employees had a master electrician's license. The defendant electrical workers held licenses from the city to install electrical signs and electrical apparatus connected with the light and power circuit and served an apprenticeship, having passed an examination on electricity before being qualified to enter the union and passed an examination given by the board of electrical examiners of the city of Cedar Rapids. Plaintiff admitted that he made electrical connections with the power circuit. Neither plaintiff nor his

employees were electricians but were Neon technicians.

We are satisfied that defendants acted in good faith in claiming the right to do the electrical work. They remonstrated with plaintiff for encroaching on their jurisdiction and tried to persuade him to employ defendants to do the electrical work on the signs which he refused to do. Defendants did not interfere with plaintiff in the manufacture of his electric signs or in the connecting of the signs with the power circuit by plaintiff, who was not an electrician, or by nonunion electricians, nor did they intimidate or coerce customers or prospective customers of plaintiff.

The basis for the declaration of defendants to third persons that plaintiff was unfair and for their refusal to connect his signs to the power circuit, or do any work on his signs and their refusal to work with nonunion men, is that plaintiff and his employees, members of the sign painters union, were not electricians, were doing electrical work, refused to employ defendant electrical workers to do the electrical work on the signs and at times employed nonunion electricians to connect the signs with power circuit. The declarations made by and the attitude of the defendants were not actuated by malice toward the plaintiff and for the primary purpose of harming him but were made for the purpose of strengthening their union, promoting their objects and the economic welfare of its members and pursuant to the general policy of the union which was carried out against all persons in the class designated unfair to union labor. Defendants insisted that as licensed electricians and under their contract they had the right to do all electrical work involved in the manufacture and maintenance of neon signs and their connection with the power circuit.

Section 9916, 1935 Code, reads:

"9916. Labor—unions. The labor of a human being either mental or physical is not a commodity or article of commerce and it shall not be unlawful for men and women to organize themselves into or carry on unions for the purpose, by lawful means, of lessening the hours of labor or increasing the wages, or bettering the condition of the members of such organizations, or lawfully carrying out their legitimate purposes."

The right of men and women to work and not to work, to

organize to promote their common interests and general welfare, to realize their legitimate objectives, to declare, with cause. that persons are unfair to union labor, to refuse to work on products produced by those considered unfair to labor, to refuse to patronize customers of such persons, the right to publish the names of those regarded as unfair to union labor, the right to urge third persons to patronize those friendly to labor, the right to compete with nonunion labor for business and to refuse to work with nonunion labor, all of these rights are firmly established and secured to union labor by a large majority of the courts of this country.

In the case of Ellis v. Journeymen Barbers Union, 194 Iowa 1179, 1183, 191 N. W. 111, 113, 32 A. L.R. 756, we stated:

"The law puts no limit upon the right of defendant to exercise fair persuasion through publicity, but it cannot countenance any display that is the equivalent of force and intimidation, or of a disturbance of the peace, or of aggressive interference with the right of peaceful ingress and egress to and from the plaintiff's shop."

In Meier et al. v. Speer, 96 Ark. 618, 132 S. W. 988, 990, 32 L. R. A. (N. S.) 792, plaintiff was considered unfair because he employed nonunion men and defendants refused to work on buildings that plaintiff had contracted to build. After stating that the defendants used no violence, illegal threats or intimidation, the court said that:

"The reason appellants had this understanding among themselves was because they were members of labor unions, one of the rules of which required its members, under a penalty, to work for only those who employed exclusively union labor; that appellants joined the union and adhered to the rule in the instant case, primarily for the promotion of their own interest, and not for the purpose of injuring Carbaugh, except as he might be injured incidentally by adherence to the rule which was made solely for the benefit and protection of the members of the union to which appellants belonged; that appellants had no ill will against Carbaugh, and refused to work for him or his intended subcontractor solely because of his (Carbaugh's) attitude toward union labor; that appellants in their refusal to work for Carbaugh, or one whom he might employ, used no in-

timidation or coercion of any character in order to dissuade others from working for or patronizing him.''

See Parkinson Co. v. Building Trades Council, 154 Cal. 581, 98 P. 1027, 21 L. R. A. (N. S.) 550, 16 Ann. Cas. 1165; Cohn & Roth Electric Co. v. Bricklayers, Masons & Plasterers Union, 92 Conn. 161, 101 A. 659, 6 A. L. R. 887; Gill Engraving Co. v. Doerr, D. C., 214 F. 111; Pickett v. Walsh, 192 Mass. 572, 78 N. E. 753, 6 L. R. A. (N. S.) 1067, 116 Am. St. Rep. 272, 7 Ann. Cas. 638; Senn v. Tile Layers Protective Union, 301 U. S. 468, 57 S. Ct. 857, 81 L. Ed. 1229; Lohse Patent Door Co. v. Fuelle, 215 Mo. 421, 114 S. W. 997, 22 L. R. A. (N. S.) 607, 128 Am. St. Rep. 492; American Federation of Labor v. Buck's Stove & Range Co., 33 App. D. C. 83, 32 L. R. A. (N. S.) 748; New Jersey Painting Co. v. Local Union No. 26, Brotherhood of Painters, 96 N. J. Eq. 632, 126 A. 399, 47 A. L. R. 384; Beck v. R. R. Teamsters Protective Union, 118 Mich. 497, 77 N. W. 13, 42 L. R. A. 407, 74 Am. St. Rep. 421; Longshore Printing Co. v. Howell, 26 Ore. 527, 38 P. 547, 28 L. R. A. 464, 46 Am. St. Rep. 640; Rhodes Brothers Co. v. Musicians Protective Union, 37 R. I. 281, 92 A. 641, L. R. A. 1915E, 1037; Gray v. Building Trades Council, 91 Minn. 171, 97 N. W. 633, 63 L. R. A. 753, 103 Am. St. Rep. 477, 1 Ann. Cas. 172; Steffes v. Motion Picture Machine Operators, 136 Minn. 200, 161 N. W. 524; Bossert v. Dhuy, 221 N. Y. 342, 117 N. E. 582, Ann. Cas. 1918D, 661; Marx & Haas Jeans Clothing Co. v. Watson, 168 Mo. 133, 67 S. W. 391, 56 L. R. A. 51, 90 Am. St. Rep. 440.

█ Intimidation and coercion are essential elements of boycott. It must appear that the means used are threatening and intended to overcome the will of others and compel them to do or refrain from doing that which they would or would not otherwise have done. Modern Law of Labor Unions by Martin, page 103, section 69.

█ A secondary boycott may be defined as a combination to cause a loss to one person by coercing others against their will, to withdraw from him their beneficial business intercourse, by threats that unless those others do so, the combination will cause similar loss to them, or by the use of such means as the infliction of bodily harm on them or such intimidation as will put them in fear of bodily harm. Modern Law of Labor Unions by Martin, page 103, section 67. See 32 C. J. 167, section 233;

Toledo, Etc., R. Co. v. Pennsylvania Co., C. C., 54 F. 730, 19 L. R. A. 387; Gray v. Building Trades Council, 91 Minn. 171, 97 N. W. 633, 63 L. R. A. 753, 103 Am. St. Rep. 477, 1 Ann. Cas. 172; Casey v. Cincinnati Typographical Union, C. C., 45 F. 135, 12 L. R. A. 193; Meier v. Speer, 96 Ark. 618, 132 S. W. 988, 32 L. R. A. (N. S.) 792; American Federation of Labor v. Buck's Stove & Range Co., 33 App. D. C. 83, 32 L. R. A. (N. S.) 748; Clarkson v. Laiblan, 178 Mo. App. 708, 161 S. W. 660; Senn v. Tile Layers Protective Union, 301 U. S. 468, 57 S. Ct. 857, 81 L. Ed. 1229.

■ The word "boycott" does not necessarily import illegality, and a threat to do something that a person has the right to do is not a threat in a legal sense. The combination of the defendants was to do a lawful thing and the means used to accomplish their legitimate objectives were lawful. There was no conspiracy. We find no evidence of coercion or intimidation of third persons by the defendants. If customers or prospective customers refrained from patronizing him, their refusal to patronize him or the withdrawal of such patronage was voluntary. After customers of plaintiff and third persons received notice that plaintiff was unfair and that defendant electrical workers would do no electrical work on signs manufactured by the plaintiff, they were still at liberty to deal or not to deal with plaintiff in the exercise of their free choice.

We find no evidence of damage to the plaintiff, but if it could be said that there is any evidence in the record from which an inference might be drawn that plaintiff suffered damage it was the incidental result of the lawful efforts of defendants to strengthen their union and promote the interests and welfare of its members.

The Constitution of the Building Trades Department of the American Federation of Labor provides that "each affiliated organization shall be required to submit a written statement covering the extent and character of its trade jurisdiction and when allowed by the Executive Council and approved by the general convention, no encroachment by other trades will be countenanced or tolerated".

The only evidence against the defendant Cedar Rapids Building Trades Council is that with knowledge of the merits of the controversy between plaintiff and defendant, it concluded that plaintiff had encroached on the jurisdiction of Local Union

No. 405 and joined with Local Union No. 405 in declaring plaintiff unfair.

The plaintiff failed to establish secondary boycott. The case is reversed and remanded for a decree in harmony with this opinion.—Reversed and remanded.

BLISS, HALE, and MILLER, JJ., concur.

MITCHELL, C. J., concurs in result.