STATE OF IOWA, Appellee, v. CARL KEUL, Appellant.

No. 45835.

OCTOBER 20, 1942.

REHEARING DENIED JULY 27, 1943.

854

John Connolly, Jr., C. I. McNutt, George E. O'Malley, and Irvin I. Schlesinger, all of Des Moines, for appellant.

John M. Rankin, Attorney General, Jens Grothe, Assistant Attorney General, A. A. Herrick, Special Assistant Attorney General, and Francis J. Kuble, County Attorney, for appellee.

OLIVER, J.—The indictment charged that Carl Keul (appellant), Joe Keul, Leo Quinn, Walter Watson, and Ted Beebe conspired together with malicious intent wrongfully to injure the business, property, or rights in property of Mercer Nicholson, as defined in section 13162, Code of Iowa, 1939. Carl Keul was granted a separate trial. Upon trial to a jury he was convicted. From judgment thereon he appeals.

The parties charged as conspirators were officers and agents of Local No. 90 (Des Moines) of the truck drivers' and warehousemen's union. Mercer Nicholson owned and operated a truck line between Des Moines and Chicago. He had no permit to operate in interstate commerce and conducted his operations under leases or contracts with other parties who held such permits.

In April and December 1940, Nicholson's operations were stopped by strikes called by some of the defendants. The State introduced evidence of declarations of all the alleged conspirators that they were going to stop Nicholson from operating, and of similar declarations by the various defendants, in substance, "Nicholson is through and will never operate again; Nicholson will never operate again in Des Moines or Chicago." There was evidence that appellant told Nicholson, in substance: "You have had a good business and you will again if I let you go. You will be out of my control and I am not going to do it." The party under whose permit Nicholson's trucks had been operating and who had a contract with the union, testified that after the strike was called in December 1940, he was told by appellant that he (the witness) could no longer use Nicholson's trucks. A day or two later this party canceled his lease or contract with Nicholson.

■ I. Appellant assigns as error the overruling of his motion for a bill of particulars. The ruling was correct. The indictment, together with the attached minutes of the evidence, which consisted of 129 typewritten pages, informed appellant of the particulars of the offense charged sufficiently to enable him to prepare his defense. See Code section 13732.04. Notices of additional testimony complied with Code section 13851. State v. Loucks, 218 Iowa 714, 253 N. W. 838.

■ II. Appellant contends the trial court erred in overruling his motion for directed verdict, based upon the insufficiency of the evidence. He was charged with conspiring with the others with malicious intent wrongfully to injure the business, etc., of Nicholson. The State produced evidence of statements and declarations of the accused men, reference to some of which has already been made, and of numerous transactions, in which they participated, connected with the strikes and with the trucking operations of Nicholson and others.

Appellant asserts the activities of defendants were lawful and proper in connection with their duties as representatives of the labor union. The right to form labor unions, and by lawful means to act in furtherance of their legitimate purposes, is not open to question. Section 9916, Code of 1939; Smythe Neon Sign Co. v. Local Union, 226 Iowa 191, 284 N. W. 126.

However, the lawfulness of a union and its right to engage in legitimate strikes and other activities may not be used as a shield by those who enter into a combination, by concert of action, to accomplish the unlawful purpose of injuring the business of another. The agreement to accomplish such purpose is a conspiracy.

Many circumstances assertedly tending to indicate appellant's innocence or guilt of the conspiracy charged in the indictment have been noted by opposing counsel. These and other matters shown in evidence have been considered but will not be here discussed in detail. Under the record, we think the question of defendant's guilt of the crime charged was for the jury and that the court did not err in so ruling. State v. Caine, 134 Iowa 147, 111 N. W. 443.

■ III. Over objections of appellant the court permitted

the State to introduce certain evidence of alleged transactions, between the parties accused of conspiracy and third parties, similar to those upon which the charge was based. Some of this evidence may have tended to show the commission of offenses other than that for which appellant was on trial. The general rule is that the State is not permitted to introduce evidence to prove the accused has committed offenses not charged in the indictment. To this rule there are certain exceptions, one of which is that evidence bearing upon the question of intent is not rendered inadmissible because it may incidentally tend to prove defendant's guilt of some other crime. In this case the intent with which the alleged conspiracy was formed was an essential element. To show intent (and perhaps for other purposes within the exceptions to the general rule) the evidence in question appears relevant to appellant's guilt of the crime charged. Therefore, the fact that some or all of said transactions in themselves may have been substantive offenses did not render such evidence inadmissible. State v. Brady, 100 Iowa 191, 69 N. W. 290, 36 L. R. A. 693, 62 Am. St. Rep. 560; State v. Donavan, 125 Iowa 239, 101 N. W. 122; State v. Hickman, 195 Iowa 765, 193 N. 'W. 21; State v. Leeper, 199 Iowa 432, 200 N. W. 732; 22 C. J. S. 1100, section 686.

IV. Appellant complains that the court overruled numerous objections to the admission of evidence of acts and conversations of alleged coconspirators not in his presence. The crime charged is a conspiracy. It may be shown by circumstantial evidence. Where a prima facie case of conspiracy has been established, acts done and words spoken by one or more of the conspirators, pursuant to the unlawful plan, may be shown against the other conspirators, regardless of whether or not they were present at the times in question. State v. Davis, 230 Iowa 309, 297 N. W. 274; State v. Moore, 217 Iowa 872, 251 N. W. 737; State v. Caine, 134 Iowa 147, 111 N. W. 443; State v. Schreck, 231 Iowa 542, 1 N. W. 2d 690. Practically all the evidence objected to was clearly admissible under the foregoing doctrine. The evidence admitted under the few rulings which might be considered questionable was not such as, to suggest prejudice, even though, for the purpose of argument, said rulings be assumed erroneous.

■ V. Error is assigned to the overruling of repeated objections to most of the questions propounded by the State in the cross-examination of six witnesses who had testified that appellant's general reputation in the community as a law-abiding citizen was good. The background for these questions was a milk-drivers' strike in Des Moines. It is not contended that the strike, which occurred prior to the alleged conspiracy, was in any manner related to the conspiracy so that evidence concerning the strike would have been admissible as an aid in proving said charge. Nor did the direct examination touch upon the strike. However, it is asserted the cross-examination was proper for the purpose of testing the credibility of the witnesses.

It is well established that a witness who testifies to the good reputation of a defendant, relative to certain traits of character, may be asked upon cross-examination whether he has heard reports and rumors of particular acts or vices of said person inconsistent with the repute attributed to him by the witness. This is permissible to test the credibility of the witness by ascertaining his good faith, his conception of good reputation, the extent of his information, and his accuracy, but not for the purpose of proving such acts or conduct. State v. Wheelock, 218 Iowa 178, 184, 254 N. W. 313, 317.; State v. Kimes, 152 Iowa 240, 132 N. W. 180; State v. Rowell, 172 Iowa 208, 154 N. W. 488; State v. Arnold, 12 Iowa 479; Spalitto v. United States, 8 Cir., Mo., 39 F. 2d 782; annotation 71 A. L. R. 1504; 20 Am. Jur. 305, 306, section 326; 70 C. J. 642, section 811; 22 C. J. S. 1076, 1078, 1079, section 678. But a witness who testifies to reputation only, as distinguished from character, should not be cross-examined as to conduct of the party within the personal knowledge of the witness. State v. Poston, 199 Iowa 1073, 1075, 203 N. W. 257, 258.

■ In this case, the first phase of the cross-examination of each witness dealt with so-called reports and rumors (apparently newspaper stories) that during the milk-drivers' strike, Watson, Joe Keul, and Beebe, three of appellant's codefendants who were officers in Local Union 90, for which he was business agent, attacked certain milk drivers, with gas pipes and clubs. The record indicates the newspaper stories did not

connect appellant with the violence or refer to him in any way. Nor was it suggested that he participated in the rumored violence.

The witness Baker was asked:

"Q. Have you heard any reports or rumors concerning Carl Keul's connection with a certain milk strike in 1938, where there was violence and several persons were beaten up with lead pipes, gas pipes?"

The witness answered that he did not hear anything about Carl Keul's being implicated in it; that he heard what was in the papers about the violence.

After the witness Heaps testified he heard no reports and rumors, his cross-examination continued:

"Q. Rumors and reports to this effect, that while Carl Keul was business representative of Local No. 90, in 1938, men with whom he was associated in that union resorted to violence and lawlessness during the milk strike of 1938? * * * Q. Now I am asking you, if you had heard reports and rumors of that kind, would that alter your opinion as to his good moral character and character for good citizenship? A. Reports and rumors would not have changed my mind."

Mr. Couch, president of the State Federation of Labor, testified he read the newspaper stories concerning the acts of violence of the three men, and that these men continued as officials of the union and appellant continued as its business agent. He was then asked:

"Q. Notwithstanding that, you say his reputation for honesty and good citizenship is good? A. Very definitely, because I know of no offense that he has committed."

The final phase of the cross-examination of some of the witnesses is exemplified in the following questions asked Mr. Couch:

"Q. Did you hear any reports and rumors that after those acts or violations and lawlessness had been committed, that he condoned those offenses? A. No. * * * Q. Now had you heard reports and rumors that he condoned those offenses, if

that took place, would you change your opinion? * * * A. Not on reports. I would want to satisfy myself of the fact."

Another witness, an attorney, was asked if he had heard the reports and rumors that Watson, Joe Keul, and Beebe were involved in said violence. He answered that all he heard was what he read in the newspapers. He was then asked:

"Q. Let me ask you this question, if at that time it had come to your attention and if you knew that these men were involved in that strike and that acts of violence that occurred in that strike were approved by Carl Keul, would it have changed your opinion as to his reputation as a law abiding citizen? * * * A. * * * if Carl Keul approved of or indulged in acts of violence it certainly would change my opinion possibly of him as a law abiding citizen. That is about as close as I can come to that answer because I don't know what these acts of violence were at all."

The sheriff of Polk county was cross-examined, in part:

"Q. Did you hear reports and rumors at that time, that after those alleged acts of violence and lawlessness, the three men mentioned, to-wit, Joe Keul, Walter Watson, and Ted Beebe, continued to be associated with Carl Keul as fellow officers and fellow officials of the Union? * * * A. I suppose I read it in the newspapers that they were connected with that organization. * * * Q. Now, notwithstanding those reports of that type and character, you are still of the opinion that Carl Keul's reputation for being a law-abiding citizen is good? A. I think, so far as I know, that he has been a law-abiding citizen. * * * Q. I will ask you this, did you hear at that time reports and rumors that he approved of those acts of violence and lawlessness? * * * A. I never heard that, no, sir. Q. You did not hear it? A. No sir. Q. Now had you heard that Carl Keul approved of those acts of violence and lawlessness, would that have changed your opinion relative to his being a law-abiding citizen? * * * A. Yes, I think it would."

A judge of the municipal court of Des Moines, who had

testified he had heard no reports of violence during the milk strike, was further cross-examined:

"Q. Now had you heard that there was a strike, and that during that strike there' was violence and lawlessness, and that some of the associates in the union of Carl Keul, participated in actual violence and lawlessness, would that change your opinion relative to the good moral character and good citizenship or reputation of being, law-abiding of Carl· Keul? * * * A. If I had heard rumors to the effect that he had participated in such, then his reputation in my opinion would be bad. Q. And if you heard reports and rumors that he encouraged and condoned acts of violence and lawlessness, would that change your opinion? * * * A. It would not change my present opinion as to his general reputation, because I have not heard those things, but if I had heard those things then his reputation would be bad."

The cross-examination was unusual in that it was primarily based upon rumors of acts of violence which did not refer to appellant. The only rumors shown to have been circulated involved only three other named persons.

 From this point the cross-examination proceeded upon the theory that because the three men were officers of the union for which appellant was business agent, his reputation as a law-abiding citizen was not good. Such inference was not justified by the record. Rumors that certain named persons have committed assaults do not make their associates in lawful organizations persons of bad reputation. The test suggested by the cross-examination would destroy many good reputations. Another tenuous theory pressed in the cross-examination was that appellant's reputation became bad following the rumors about the others, because the others continued as officers of the union and he continued to accept employment as its business agent.

Inquiries put by a cross-examiner to a reputation witness concerning rumors of specific acts are permissible for the purpose only of testing his credibility. Obviously, such inquiries should be limited to rumors which affect the reputation of the

defendant. Inquiries about rumored acts which affect the reputation of third parties only are not a proper test of the extent of the information of the witness concerning the subject of his testimony or of the credibility of the witness in other respects.

In the case at bar, the proper purpose of the cross-examination appears to have been frequently subordinated to efforts to develop theories of the State, heretofore noted as incorrect, that the rumored acts of violence of other persons gave appellant a bad reputation. Accordingly, a large part of the cross-examination consisted of questions which suggested that, because of the rumors about the three other men, appellant's reputation as a law-abiding citizen was not good. Appellant's objections to such questions should have been sustained and the scope of the cross-examination limited to testing the credibility of the witnesses.

In the final phase of the cross-examination witnesses were asked if they had heard reports or rumors that appellant condoned or approved or encouraged the alleged acts of violence. Without attempting to consider the implications connected with the use of the words "condoned" and "approved" in some of the questions, it will be assumed, for the purpose of this discussion, that the inquiries referred to reports or rumors of acts of appellant which would constitute misconduct. No witness testified he had heard any reports that appellant condoned, approved, or encouraged the rumored violence. Thereupon, over appellant's objections, witnesses were required to answer hypothetical questions which assumed that appellant approved, encouraged, or condoned acts of violence, or that the witness had heard rumors to that effect. Some answers based upon these hypotheses were that the previously expressed opinions of the witnesses concerning appellant's reputation as a law-abiding citizen would be changed or that his reputation would be bad.

In the cross-examination of a defendant's character witnesses, the use of hypothetical questions which assume misconduct or rumored misconduct of the defendant, of which there is no evidence, has frequently been disapproved. State v. Rowell, 172 Iowa 208, 220–223, 154 N. W. 488, 492, 493; Pittman v. United States, 8 Cir., Mo., 42 F. 2d 793; annotation 71 A. L. R. 1537;

862

State v. Seay, 282 Mo. 672, 222 S. W. 427; State v. Shull, 131 Or. 224, 282 P. 237, 71 A. L. R. 1498, 1504.

In State v. Rowell, supra, it is said that if the prosecutor is permitted to tell the jury that the defendant is reputed to have done certain things, and the witness testifies that he thinks the things asserted by the examiner are incompatible with a good reputation, the jury is left at liberty to find that the testimony as to general good repute should have no effect or lessened effect. "This goes beyond all license that in reason should be extended the cross-examiner." [172 Iowa 208, 223, 154 N. W. 488, 493.]

And the Rowell case also states that the cross-examiner may not "manufacture his foundation and then proceed upon the foundation thus laid."

In Pittman v. United States, 8 Cir., Mo., 42 F. 2d 793, 797, it was said:

"'* * * cross-examination should not be permitted to be used to covertly convey to the minds of jurors suspicion and prejudice as to a defendant by a recital as facts of supposed matters not appearing in the evidence and wholly outside of the case."

See, also, State v. Rounds, 216 Iowa 131, 248 N. W. 500.

It is true the trial court has considerable discretion in determining the latitude of cross-examination of character witnesses. State v. Arnold, 12 Iowa 479, 487. However, we are satisfied the court permitted the State to go too far in cross-examining said witnesses and that said cross-examination resulted in serious prejudice to appellant.

■ VI. After appellant had perfected his appeal to this court the indictment was dismissed as to the other four defendants, "upon recommendation of the Attorney General and the County Attorney, in the interests of Justice * * *." It is contended said dismissal requires a reversal of appellant's conviction "as the appellant alone cannot be guilty of the crime of conspiracy." The indictment charged that the five named parties conspired together. There was no charge that they conspired with other named or unknown parties.

The offense of conspiracy requires the concurrence of at least two persons in its commission. Therefore, the acquittal of

all but one removes the basis for such charge, and verdicts convicting one only and acquitting all the others create a repugnancy upon the record. State v. Davis, 230 Iowa 309, 297 N. W. 274; 11 Am. Jur. 560, section 26; annotation 72 A. L. R. 1180; annotation 97 A. L. R. 1312.

However, in this case the codefendants were not acquitted. Nor was the dismissal of the indictment as to them equivalent to an acquittal of all of said codefendants. State v. Veterans of Foreign Wars, 223 Iowa 1146, 274 N. W. 916, 112 A. L. R. 383. Although there is authority to the contrary, we think the better rule is that a defendant may be convicted of conspiracy notwithstanding the dismissal of the indictment (not under circumstances amounting to acquittal) as against all others with whom he was charged with conspiring. Bradshaw v. Territory of Washington, 3 Wash. Terr. 265, 14 P. 594; Berry v. State, 202 Ind. 294, 165 N. E. 61, 173 N. E. 705, 72 A. L. R. 1177; Rutland v. Commonwealth, 160 Ky. 77, 169 S. W. 584. See, also, State v. Lloyd, 152 Wis. 24, 139 N. W. 514, Ann. Cas. 1914C, 415.

VIII. Several assignments of error are based upon instructions. It is sufficient to say that we have examined the instructions and find none of said assignments of error is well founded.

The errors in connection with the cross-examination of the character witnesses entitle appellant to a new trial.—Reversed.

WENNERSTRUM, C. J., and HALE and STIGER, JJ., concur.

MITCHELL, J., specially concurs.

GARFIELD and MILLER, JJ., dissent from Division V.

MITCHELL, J. (specially concurring)—I concur in the result, but disagree with the majority as to Division VI.

This defendant cannot be guilty if his coconspirators are innocent. The law-enforcing officers of Iowa asked the court "in the name of justice" to dismiss the indictments against all of the other defendants.

In 11 Am. Jur. 560, 561, section 26, I find the following statement:

"However, if all but one of the defendants charged in an indictment for conspiracy are acquitted, unless the offense is

alleged to have been committed with others unknown, the verdict against that one will not be permitted to stand. [Cites cases, and then continues.] Similarly, a majority of the cases subscribe to the rule that if the prosecutor enters a nolle prosequi as to one of two defendants accused of conspiracy, the other must be acquitted." (Citing certain cases.)

It seems extremely unfair to me to dismiss the indictments as to the other defendants, who were just as guilty as this defendant, if any of them are guilty, and not to dismiss as to this defendant.

GARFIELD, J. (dissenting)—I respectfully dissent from Division V of the foregoing opinion.

I think it was proper for the prosecuting attorneys to ask appellant's character witnesses if they had heard reports or rumors of violence by fellow union officials in connection with the milk strike, which, according to the reports, had been condoned or approved by appellant. Such reports would be inconsistent with appellant's good reputation as a law-abiding citizen, to which these witnesses had testified. This accords with the well-established rule which the majority recognizes in the second paragraph of Division V.

In any event, questions regarding appellant's reported approval of violence in the milk strike were not prejudicial to appellant because the witnesses all said they had heard no such reports. The answers to these questions were therefore all favorable to appellant. Annotation 71 A. L. R. 1504, 1539, 1540; State v. Rowell, 172 Iowa 208, 214, 221, 154 N. W. 488; State v. Richards, 126 Iowa 497, 501, 102 N. W. 439; State v. Tippet, 94 Iowa 646, 650, 651, 63 N. W. 445; State v. McGee, 81 Iowa 17, 19, 46 N. W. 764.

Counsel for the State asked some of the character witnesses whether, if they had heard reports that appellant had condoned acts of violence in the milk strike, that would change their opinion of his reputation. I agree that such questions are not to be approved and should not have been asked. The witnesses were thus asked for an opinion upon a hypothetical state of facts not in evidence. But, since the State had a right to

inquire whether the witnesses had heard about the reports, the mere asking of this hypothetical question is insufficient basis for reversal. It introduced no prejudicial matter before the jury. All of the character witnesses made it plain they had heard no reports unfavorable to appellant. This was emphasized on redirect examination of some of these witnesses.

The annotation in 71 A. L. R. 1504, 1519, states:

"Trial courts are clothed with a broad discretion in respect to permitting the cross-examination of the defendant's character witness as to rumors or reports of particular acts or offenses. * * *

"And the extent of such cross-examination rests largely in the discretion of the trial court."

The majority recognizes that the trial court has considerable discretion in a matter of this kind. I think there was no such abuse of that discretion here as warrants a reversal.

MILLER, J., joins in this dissent.