The Cohn and Roth Electric Company *vs.* Brick-layers, Masons and Plasterers Local Union No. 1, et als.

First Judicial District, Hartford, May Term, 1917.

Prentice, C. J., Roraback, Wheeler, Beach and Gager, Js.

Individuals may work for whom they please and quit work when they please, provided they do not violate their contract of employment. Combinations of individuals have similar rights, but because of the liability of others to injury from the concerted action of numbers, the exercise of such rights is subject to certain restrictions.

The members of labor unions may, by agreement between themselves, refuse to work, or to continue to work, with nonunion men, provided such action is taken in their own interest and not for the primary purpose of injuring another or others, and the means employed are neither unlawful nor opposed to public policy.

The upbuilding or strengthening of a labor union is a legitimate end, to accomplish which its members may lawfully refuse to work with nonunion employees; although in so doing they contemplate the probability of injury to an open-shop contractor or his employees.

Such refusal does not deprive an employer of his legal option to engage such men as he pleases, where plenty of nonunion men, qualified for the desired work, are available in that locality. Under such circumstances, and in the absence of a finding to that effect, the cessation of work by the defendants cannot be regarded as the cause of the employer's breach of his contracts.

Employees having the legal right to refuse to work, or to continue to work, with nonunion help, may lawfully notify their employers or contractors that a strike will follow if nonunion men are employed upon the same jobs, as they did in the present case; and the giving of such a notice would not ordinarily constitute a violation of the intimidation statute (§ 1296), though it might upon a different state of facts.

Argued May 1st—decided August 2d, 1917.

Suit for an injunction to restrain the defendants from intimidating by strikes, threats of strikes, boycotts or otherwise, any property-owner, builder, or contractor, for the purpose of inducing the latter to cancel contracts with the plaintiff, which conducted an

open-shop, or for the purpose of inducing them to refrain from thereafter employing, or from entering into contracts with, the plaintiff,—brought to and tried by the Superior Court in Hartford County, *Shumway, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiff. *No error.*

*Ralph O. Wells,* for the appellant (plaintiff).

*Thomas J. Spellacy* and *William M. Maltbie,* with whom was *Hugh M. Alcorn,* for the appellees (defendants).

WHEELER, J. The plaintiff has waived its claim for damages and relies upon its claim for injunctive relief, alleging that the defendant labor unions and the members thereof have combined for the purpose of obtaining a monopoly of all the employment for the members of these local unions in the several building trades in which they are engaged, and for the purpose of excluding from such employment all who are not members.

In furtherance of this purpose and to establish this monopoly the defendants are alleged to have agreed: (1) that no nonunion member shall be employed on any building in Hartford or its vicinity; (2) that no open-shop employer shall be permitted to supply any labor or materials for any such building; (3) that they will compel all owners, employers, and other persons to refuse to purchase supplies from open-shop employers; (4) that they will refuse to work for any owner or employer who shall purchase supplies from any open-shop employer; (5) that they will boycott all nonunion members and open-shop employers and all persons doing business with them. In furtherance of said boycott the defendants are alleged to have agreed: (6) to cause all members of the defendant unions to refuse to

work on every building owned by any person who owns any building on which any nonunion member is employed, or on which any open-shop employer is furnishing, or has contracted to furnish, labor or materials; and (7) to refuse to work on each and every job on which a general contractor may be engaged if any nonunion member is working for such general contractor, or if any open-shop contractor is furnishing, or has contracted to furnish, any labor or materials.

The complaint also alleges that in furtherance of these purposes and agreements the defendants have boycotted the plaintiff and all owners for whose buildings the plaintiff has furnished labor or materials, and all contractors or builders by whom the plaintiff has been employed, directly or indirectly, and have threatened to institute strikes of all of these members on all work on which any of the members were engaged for any owner or by any contractor for whom the plaintiff has furnished labor or materials; and the defendants have instituted strikes in accordance with these threats in all cases where their demands have not been promptly complied with. ..

Comparing the facts found with those alleged in the complaint, we find a marked dissimilarity. We can discover no finding of the illegal purpose of these defendants which the complaint reiterates, nor one of a conspiracy and agreement such as is alleged, save in one particular. That agreement is not specifically found, but it is found that the several defendant local unions have adopted the same or analogous by-laws obligatory upon all of their members. These by-laws prohibit members working with nonunion men under penalty for violation. They provide that "no member shall work for any employer who is employing nonunion . . . workers," nor on any job contracted for by any nonunion contractor, nor on any job sublet to any con-

tractor by any open-shop or nonunion contractor. The Hartford Structural Building Trade Alliance has adopted a by-law, of which Alliance all the defendant unions are members, and by which by-law all defendants are bound, that "no member of this Alliance shall work with any person . . . working at any trade in the Structural Building Trades Alliance who does not hold a working card" from the Alliance.

These by-laws create an agreement on the part of these several unions and all of their members, binding upon them, that their members will not work for any employer employing nonunion men on that job, nor for any nonunion contractor, nor on any job sublet to any contractor by any open-shop or nonunion contractor. Interpreted together, these several by-laws constitute an agreement, which membership imposed upon all members of the defendant unions, that they would not work on any job on which nonunion men or employers are at work.

All members of the defendant unions have ceased to work and refused to work on any building when the nonunion employees of the plaintiff have commenced work on such building. In one instance the members of the defendant unions withdrew from work on five buildings being erected by a single general contractor, because the plaintiff's nonunion employees were at work on one of these buildings. The defendants maintain their legal right to do these acts, and threaten and intend to continue in such course unless restrained by injunction.

The case set up in the complaint is not the agreement to cease work for a contractor if nonunion men are employed by him on any of his jobs, no matter where located, upon which the defendants are not at work and to which they have no relation; and if the complaint does rely upon this cause of action the finding does not

support it. It recites that, in one instance, the members of the defendant unions ceased work on five buildings in process of erection by one contractor, because plaintiff's nonunion employees were at work on one of these buildings. A single instance of one act done would hardly permit a holding that the trial judge had, in refusing an injunction, exercised his discretion improperly. It is noticeable that the finding does not state that these strikes were instituted for any of the unlawful purposes so frequently reiterated in the complaint.

The trial court could not find the existence of an illegal purpose without proof, and we cannot so hold without a finding to that effect. If the purpose of the strikes were illegal, they were clear deprivations of the right of the plaintiff to work. *State* v. *Glidden*, 55 Conn. 46, 8 Atl. 890. If the purpose was to better the condition of the defendants, a situation is presented not heretofore considered by us, viz: a determination of whether an agreement to strike in a case in which the striking workmen are not concerned in a trade dispute, or in which their labor has not come in competition with nonunion labor, is lawful. Its decision is practically another phase of the question decided in *Pickett* v. *Walsh*, 192 Mass. 572, 582, 78 N. E. 753, in the last point treated in that case, and the first and second causes of action set forth in the complaint, pages 579 and 587 of the opinion. We express no opinion upon this point, leaving its decision open until it is fairly raised in the pleadings and in the record on appeal.

The agreement of the defendant unions and their members, that the members would refuse to work with nonunion men, followed by action by the members ceasing to work with the nonunion men of the plaintiff, is the only ground of complaint which the facts found support. Individuals may work for whom they please,

and quit work when they please, provided they do not violate their contract of employment. Combinations of individuals have similar rights, but the liability to injury from the concerted action of numbers has placed upon their freedom to quit work these additional qualifications: that their action must be taken for their own interest and not for the primary purpose of injuring another or others, and neither in end sought, nor in means adopted to secure that end, must it be prohibited by law nor in contravention of public policy. *Connors* v. *Connolly*, 86 Conn. 641, 86 Atl. 600, is an example of an agreement which we held to be contrary to public policy.

The members of a union, acting upon their agreement, may refuse to enter upon employment with nonunion labor, or refuse to continue their employment with nonunion labor, provided their action does not fall within the qualifications of their freedom of action already stated. *Pickett* v. *Walsh*, 192 Mass. 572, 582, 78 N. E. 753; *Burnham* v. *Dowd*, 217 Mass. 351, 356, 104 N. E. 841; *Grassi Contracting Co.* v. *Bennett*, 174 N. Y. App. Div. 244, 160 N. Y. Supp. 279, 284; *Gray* v. *Building Trades Council*, 91 Minn. 171, 185, 97 N. W. 663. In *State* v. *Stockford*, 77 Conn. 227, 237, 58 Atl. 769, HALL, J., thus states our law: "Workmen may lawfully combine to accomplish their withdrawal in a body from the service of their employers, for the purpose of obtaining an advance in wages, a reduction of the hours of labor, or any other legitimate advantage, even though they may know that such action will necessarily cause injury to the business of their employers, provided such abandonment of work is not in violation of any continuing contract, and is conducted in a lawful manner and not under such circumstances as to wantonly or maliciously inflict injury to person or property."

The facts found show that the plaintiff has suffered damage in its business and that the defendants contemplated this probable effect. A cause of action was thus made out entitling the plaintiff to judgment, unless the defendants have made out, or the facts presented disclose, that the defendants were justified in what they did. *Connors* v. *Connolly*, 86 Conn. 641, 647, 86 Atl. 600. The finding is not express upon this point, but we are of the opinion that the necessary implication from the subordinate facts found is a justification for the defendants' course.

The end the defendants had in view by their by-laws was the strengthening of their unions. That was a legitimate end. There is no indication that the real purpose of the defendants was injury to the plaintiff or the nonunion men it employed. Whatever injury was done the plaintiff was a consequence of trade competition, and an incident to a course of conduct by the defendants, begun and prosecuted for their own legitimate interests. The means adopted were lawful: no unlawful compulsion in act or word was present. The plaintiff had its option to employ the defendants or not; trade conditions did not convert this legal option into practical compulsion, since over one third of the men working in all of these trades to which the defendants belong in this locality were nonunion men. The cessation of work was not intended to cause a breach of existing contracts, and the cancellation of some of its contracts by the plaintiff is, so far as we know, attributable to the plaintiff's act, rather than to the defendants'. Certainly the finding is too bare of detail to permit the latter conclusion.

The notification by the defendants to the general contractors and owners, of the probability of a strike by them in case the plaintiff was employed on any job on which they were engaged, was no more than a

notice that if nonunion labor was employed on jobs on which the defendant union men were employed the defendants would strike.  If defendants had the right to contract that they would not work with nonunion labor, and if they might cease work if nonunion men were employed, as we hold in *State* v. *Stockford,* 77 Conn. 227, 58 Atl. 769, we can see no unlawfulness in their notice to contractors and employers of what would happen if nonunion men were employed on jobs on which they were engaged.  The notice was the course of fair dealing.  It did not take away the free choice from the contractor or owner; it possessed him of the facts which might affect his decision.

We do not think the notice was an act fairly within the intimidation statute.   General Statutes, § 1296. The facts surrounding the giving of such a notice might bring it within the statute: the facts detailed in this finding do not.

There is no error.

In this opinion the other judges concurred.