**VAN PITTMAN v. A. J. NIX, as chief of police of the Town of Perry, Florida.**

11 So. (2nd) 791                                    January Term, 1943
February 9, 1943                                                      En Banc

*Wendell C. Heaton,* for appellant.
*T. J. Swanson,* for appellee.

BROWN, J.:

This is an appeal from an order of one of the circuit judges of the 3rd Judicial Circuit quashing a writ of habeas corpus and remanding the petititioner to the custody of the respondent chief of police. The petitioner in the court below, appellant here, was being held under a warrant issued by the Mayor of the Town of Perry, based upon an affidavit charging "that on the 25th day of September A. D. 1942, in the Town of Perry, Florida, one Van Pittman did then and there solicit and attempt to procure in a public place within the Town of Perry, Florida, from J. C. Williams, money as an entrance or

membership fee required as a prerequisite for the joining of and membership in a labor union and labor organization, contrary to the ordinance of said Town."

The ordinance relied on for this arrest consists of 7 sections. Secion 1 makes it unlawful to organize or attempt to organize within the Town any labor union or other labor organization. Section 2 prohibits any person from soliciting or otherwise attempting to procure, within said town, any person to join or become a member of any labor union or other labor organization. Section 3, which is relied on here to sustain the lawfulness of the arrest, reads as follows:

"That it shall be unlawful for any person, firm or corporation to solicit or attempt to procure on the streets, in public places or on the premises of public or private property within the Town of Perry, Florida, from any person, any money or other thing of value as an entrance or membership fee required as a prerequisite for the joining of or membership in any labor union or other labor organization."

Section 4 provides the penalty for the violation of the ordinance, a fine not exceeding $300.00 or imprisonment not exceeding six months, or both, and Section 5 provides that if any part of the ordinance be declared unconstitutional, this shall not affect the remaining portions. Sections 6 and 7 are not material here.

The learned circuit judge was of the opinion that it was within the power of the town to prohibit the act charged in the affidavit, "on the streets" or in "public places" in the town, and that the doing of such an act in public places may be separated from other portions of the section or of other portions of the ordinance without invalidating the entire ordinance, the validity of which other portions he did not think it necessary for him to pass upon. He was also of the opinion that the title of the ordinance was sufficient to embrace the objects set forth in the body of the ordinance.

We might observe here that the title of the ordinance, while it does not mention streets and public places, is sufficiently broad to cover all the territory within the town, whether public or private. The title indicates the purpose of the ordinance as a whole and reads as follows:

"An ordinance prohibiting the orginization or attempt to organize within the town of Perry, Florida, any labor union or labor organization; prohibiting the solicitation in the town of Perry, Florida, of any person to join any labor union or organization; prohibiting the solicitation of or attempt to procure within the town of Perry, Florida, any money or thing of value as an entrance or membership fee required as a prerequisite for the joining of or membership in any labor union or other organization; and providing a penalty therefor."

We think that the ordinance as a whole is invalid and must fall.

Section 1 of the declaration of rights in our Florida Constitution says that "all men have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property." And Section 12 of said declaration of Rights provides that no person shall be deprived of life, liberty or property without due process of law. A similar provision is contained in the 14th amendment to our National Constitution.

In the case of National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 81 L. Ed. 893, 57 S.C. 615, in 'construing Section 7 of the Federal N.L.R.B. Act the United States Supreme Court, speaking through Mr. Chief Justice Hughes, had this to say:

"Thus, in its present application, the statute goes no further than to safeguard the right of employees to self-organization and to select representatives of their own choosing for collective bargaining or other mutual protection without restraint or coercion by their employer.

"That is a fundamental right. Employees have as clear a right to organize and select their representatives for lawful purposes as the respondent has to organize its business and select its own officers and agents. Discrimination and coercion to prevent the free exercise of the right of employees to self-organization and representation is a proper subject for condemnation by competent legislative authority. Long ago we stated the reason for labor organizations. We said

that they were organized out of the necessities of the situation; that a single employee was helpless in dealing with an employer; that he was dependent ordinarily on his daily wage for the maintenance of himself and family; that if the employer refused to pay him the wages that he thought fair, he was nevertheless unable to leave the employ and resist arbitrary and unfair treatment; that union was essential to give laborers opportunity to deal on an equality with their employer. American Steel Foundries v. Tri-City Central Trades Council, 257 U.S. 184, 209, 66 L. Ed. 189, 199, 42 S. Ct. 72, 27 A.L.R. 360. We reiterated these views when we had under consideration the Railway Labor Act of 1926."

Some ten years ago our Court took a similar position in the case of Paramount Enterprises, Inc. v. Mitchell, et al., 104 Fla. 407, 140 So. 328. In that case this Court, speaking through Mr. Justice TERRELL said:

"The law recognizes the right of the trades, crafts, guilds, and arts, whether composed of skilled or unskilled workmen, to organize and invite others to join them. When organized, they may use the organization to promote their social, civic, and economic betterment, among other things, that of securing as much as they can for their labor. Employers may also organize for similar purposes and for the purpose of securing the best possible return on their capital. Every other profession and business may organize for like purposes, but when organized, the law recognizes no distinctions among them but all must conform alike to its decrees and mandates. Every organization including its individual members is bound and protected by social and constitutional guaranties that all must respect, among which is the right to peacefully own property and enjoy the pursuit of a trade, business, or profession. The law will not permit such rights to become a prey to those who would without just cause invade them.

"It is well settled that employees have a right to combine and fix the amount of their daily wage and to whom they will sell it. It is also true that when not under contract they may quit the services of another at any time they desire. It is alike true that employers have the right to determine the daily wage they are willing to pay and who they will employ.

Members of a labor organization may persuade their confederates not to work except on payment of an established wage; they may, without coercion bring their cause to the court of public opinion in a peaceful manner; but neither employer nor employee is permitted to use threats, force, violence, coercion, or intimidation in doing this, nor will employer or employee be permitted to present, urge, or advertise his cause by false statements, libelous attack, insulting language, derogatory implications, or by other means calculated to become a nuisance, obstruct traffic, or in any way to impede or hinder the orderly course of business or other relations. Note 27 A.L.R. 651. Under any other rule every legitimate business would be subject to the whim of anyone having opposing views as to the method of its operation."

It will be noted that in the last paragraph above quoted, we held that neither employer nor employee will be permitted to resort to any means "calculated to become a nuisance, or to obstruct traffic, or in any way to impede or hinder the orderly course of business or other relations." This was said in a case dealing with the matter of picketing. There is nothing in the ordinance now before us which indicates that any of the purposes of the ordinance were to prevent the obstruction of traffic on the streets. Counsel for appellee seek to uphold that part of Section 3 under which appellant was arrested on the theory that a municipality has the power to supervise and regulate its streets and other public ways, and also contends that section 3, insofar as it applies to public places, should be held valid under the general principle that: "The use of streets or highways as a place for the prosecution of a private business for gain is generally recognized as a special or extra-ordinary use, which the controlling public authority may prohibit or regulate as it sees proper."

We may readily concede that any person or corporation which uses the public streets of a city or any portion thereof for the conduct of his or its private business is subject to regulation, and indeed to prohibition if such use renders the use of the streets dangerous to the general public, or impedes the free flow of traffic on the streets. But the affidavit upon

which this warrant of arrest was based merely charges that: "One Van Pittman did then and there solicit and attempt to procure in a public place within the Town of Perry, Florida, from J. C. Williams money as an entrance or membership fee required as a prerequisite for the joining of and membership in a labor union." It is impossible to conceive that this single act of soliciting a man on the street, or in a public park for that matter, to join a labor union and pay a membership fee therein, could in any way prevent the free use of the street, the sidewalks or any other public place in the city by the general public.

Of course if a labor union organizer should take a stand in the middle of a sidewalk or street and stop numerous pedestrians as they came along and vociferously exhort them to join a union, he might become such a public nuisance and create such an obstruction to traffic as might make him subject to arrest under some applicable city ordinance. The same thing might be true of any one who used the sidewalks of a city for stopping and soliciting pedestrians who came along to join any kind of organization, if his conduct interfered with the free use of the sidewalk by the general public. Counsel for appellee contends that the appellant was in effect charged with operating a business on the street or in some other public place in the town, such business being the solicitation of fees for admission to membership in a labor union. We cannot agree with counsel for appellee that the charge as made in the affidavit or in the warrant amounted to charging the operation of a business by the appellant. It charged only one act, and that not necessarily of a business nature And in considering the validity of ordinances of this general nature, we must not forget that the liberty guaranteed to us by Section 13 of our Declaration of Rights includes freedom of speech and of the press. The mere fact that labor unions and their leaders some times, even when our country is in the midst of a great war, abuse their powers and privileges, to the great detriment of the general public, should not cause us to deny or impair the well settled legal right of employed workers to organize labor unions and to use their powers of persuasion to induce others to join them, so long

as no fraud or coercion is resorted to. But both organized labor and organized business might well remember the ancient maxim—*Salus populi suprema lex est.* In the end, the good of the people as a whole will prevail, and the old maxim referred to, to the effect that "The good of the people is the supreme law," will be vindicated.

Our conclusion is that the ordinance in question is contrary to fundamental legal and constitutional principles already well settled in this state, and that therefore the order or judgment of the circuit judge quashing the writ of habeas corpus in this case must be reversed and the cause remanded for further proceedings consistent with the foregoing opinion.

Reversed and remanded.

BUFORD, C. J., TERRELL, CHAPMAN, THOMAS, ADAMS and SEBRING, JJ., concur.