30 So.2d 696

HOTEL & RESTAURANT EMPLOYEES, INTERNATIONAL ALLIANCE, et al. v. GREENWOOD et al.

6 Div. 515.

Supreme Court of Alabama.

April 24, 1947.

Rehearing Denied June 12, 1947.

Earl McBee, John L. Busby and D. G. Ewing, all of Birmingham, for appellants.

Herbert S. Thatcher, of Washington, D. C., and Warren E. Hall, Jr., of Atlanta, Ga., for American Federation of Labor and appellant Union.

Horace C. Wilkinson, of Birmingham, for appellees.

SIMPSON, Justice.

The plaintiffs (appellees) are partners in the cafe business in Birmingham, Alabama, known as "Greenwood Cafe", and the defendants are international and local unions of the American Federation of Labor and the union's respective agents, Hacker and Hardwick. The defendants have appealed from a final decree of the circuit court in equity permanently restraining the striking and picketing of the Cafe. The union employees struck as a result of a labor controversy with the cafe owners.

Alabama, as well as many other states, has sanctioned the primary strike. Teller, Labor Disputes and Collective Bargaining, Vol. 1, § 84, p. 247. Of this right this court in the case of Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 14, 18 So.2d 810, 820, speaking through our present Chief Justice, said: "And we think it is well-settled that the members of a labor organization—that is, workmen who are not bound by contract for a definite period and have not, by agreement freely made, given up such rights—may, without liability, abandon their employment at any time, either singly or in a body, as a means of compelling or attempting to compel, their employers to accede to demands for better terms and conditions. As the Massachusetts Court observed in Pickett v. Walsh, 192 Mass. 572, 78 N.E. 753, 6 L.R.A.,N.S., 1067, 116 Am.St.Rep. 272, 7 Ann. Cas. 638, laborers, in the exercise of the common-law rights of citizens to pursue their callings as in their judgment they see fit, have a right to organize unions and to utilize such organizations by instituting a strike. See also Bossert v. Dhuy, 221 N.Y. 342, 117 N.E. 582, Ann.Cas.1918D, 661. Numerous authorities are found cited in 31 Am.Jur. p. 929."

This is the settled general American rule and "under the rule, laborers who have a just or fancied grievance as to hours of work, wages, etc., about which there is a dispute with their employer, may strike to coerce compliance with their demands. Some courts even hold that they may strike irrespective of whether they have cause for quitting. It is not material that laborers quit their employment by a preconcerted arrangement, that the strike is ordered and carried on by the action and through the instrumentality of a labor union, or that it is known at the time that the act of quitting employment will be attended with injury and damage to the business of the employer." 31 Am.Jur. 929, 930, § 192. (This statement of prin-

ciple is supported by numerous authorities appearing in the note to the text. See footnote hereto.[1]

The right to strike is generally rested on the lawfulness of the object or purpose for which the strike was inaugurated and modern authorities are now in general agreement that labor possesses the right to strike where their complaints are in good faith referable to wages, hours, or other conditions of immediate employment. When the strike is so aimed it is regarded by the courts as lawful. Teller, supra, § 85, p. 249; McAdory Case, supra; Hardie-Tynes Mfg. Co. v. Cruise, 189 Ala. 66, 66 So. 657; authorities in footnote supra.

On this question the American Law Institute, Restatement of the Law of Torts, pp. 118–120, § 783, Topic 2, comments as follows:

"* * * the propriety of the object of workers' concerted activity does not depend upon a judicial determination of its fairness as between workers and employers. The issue is, rather, whether the workers are demanding something which is reasonably related to employment and to the purposes of collective bargaining. Is the object one the attainment of which the workers believe will strengthen their bargaining power in the labor market, or will constitute an immediate benefit to themselves in their present jobs?

"Again, the issue as to propriety of the object does not require a judicial determination that the attainment of the object will in fact benefit the workers as stated. The inquiry is, rather, whether the workers are really seeking this object and believe that its attainment will benefit them. * * *

* * * * * *

"Finally, in the absence of applicable legislation to the contrary, the propriety of an object of concerted action by workers does not depend upon whether the object has the support of a majority of the workers affected. Concerted movements which ultimately gain the support of majorities are frequently begun by minorities."

We have carefully studied each of the cases cited in briefs but will not burden the opinion with the purposeless inclusion here of the vast array of authorities (some-

---

[1] Duplex Printing Press Co. v. Deering, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196, per opinion of Brandeis, J., dissenting; Iron Molders' Union v. Allis-Chalmers Co., 7 Cir., 166 F. 45, 20 L.R.A.,N.S., 315; Arthur v. Oakes, 7 Cir., 63 F. 310, 25 L.R.A. 414; Local Union No. 313, H. & R. E. I. A. v. Stathakis, 135 Ark. 86, 205 S.W. 450, 6 A. L.R. 894; Cohn & R. Electric Co. v. Bricklayers' M. & P. Local Union, 92 Conn. 161, 101 A. 659, 6 A.L.R. 887; State v. Stockford, 77 Conn. 227, 58 A. 769, 107 Am.St.Rep. 28; American Federation of Labor v. Buck's Stove & Range Co., 33 App.D.C. 83, 32 L.R.A.,N.S., 748 (per opinion of Van Orsdel, J.), appeal dismissed in 219 U.S. 581, 31 S.Ct. 472, 55 L.Ed. 345; Robison v. Hotel & Restaurant Employees, 35 Idaho 418, 207 P. 132, 27 A.L.R. 642; Carpenters' Union v. Citizens Committee, 333 Ill. 225, 164 N.E. 393, 63 A.L.R. 157; Karges Furniture Co. v. Amalgamated Woodworkers Local Union, 165 Ind. 421, 75 N.E. 877, 2 L.R.A., N.S., 788, 6 Ann.Cas. 829; Bricklayers' M. & P. International Union v. Seymour Ruff & Sons, 160 Md. 483, 154 A. 52, 83 A.L.R. 448; My Maryland Lodge v. Adt, 100 Md. 238, 59 A. 721, 68 L.R.A. 752; United Shoe Machinery Corporation v. Fitzgerald, 237 Mass. 537, 130 N.E. 86, 20 A.L.R. 1508; Haverhill Strand Theatre v. Gillen, 229 Mass. 413, 118 N.E. 671, L.R.A.1918C, 813, Ann.Cas.1918D, 650; Gray v. Building Trades Council, 91 Minn. 171, 97 N. W. 663, 1118, 63 L.R.A. 753, 103 Am. St.Rep. 477, 1 Ann.Cas. 172; Lohse Patent Door Co. v. Fuelle, 215 Mo. 421, 114 S.W. 997, 22 L.R.A.,N.S., 607, 128 Am.St.Rep. 492; Interborough Rapid Transit Co. v. Lavin, 247 N.Y. 65, 159 N.E. 863, 63 A.L.R. 188; Bossert v. Dhuy, 221 N.Y. 342, 117 N.E. 582, Ann. Cas.1918D, 661; National Protective Ass'n v. Cumming, 170 N.Y. 315, 63 N. E. 369, 58 L.R.A. 135, 88 Am.St.Rep. 648; Maisel v. Sigman, 123 Misc. 714, 205 N.Y.S. 807, citing R.C.L.; Roddy v. United Mine Workers, 41 Okl. 621, 139 P. 126, L.R.A.1915D, 789; Hall v. Johnson, 87 Or. 21, 169 P. 515, Ann.Cas. 1918E, 49; Longshore Printing Co. v. Howell, 26 Or. 527, 38 P. 547, 28 L. R.A. 464, 46 Am.St.Rep. 640; Erdman v. Mitchell, 207 Pa. 79, 56 A. 327, 63 L.R.A. 534, 99 Am.St.Rep. 783; Everett Waddey Co. v. Richmond Typographical Union, 105 Va. 188, 53 S.E. 273, 5 L. R.A.,N.S., 792, 8 Ann.Cas. 798; Denaby & C. Main Collieries v. Yorkshire Miners' Asso. [1906] A.C. 384, 5 B.R.C. 452, 5 Ann.Cas. 591–H.L.

times conflictory even in a single jurisdiction). They will be reported with the case. Our view is that the present state of the law is substantially as epitomized in the foregoing texts. In short, as a general proposition it may now be said that "workmen may lawfully combine to assert various forms of economic pressure upon an employer, provided the object sought to be accomplished thereby has a reasonable relation to the betterment of labor conditions, and they act peaceably and honestly." Steiner v. Long Beach Local, 19 Cal.2d 676, 123 P.2d 20, 24.

As a corollary to this general principle, and to further illucidate the doctrine, the following quotation from the opinion of Chief Justice Cardozo, then of the New York Court of Appeals, in the case of Nann v. Raimist, 255 N.Y. 307, 174 N.E. 690, 693, 73 A.L.R. 669, 674, is illustrative: "* * * the legality of the defendant's conduct is not affected by the fact that no strike is in progress in any of the plaintiff's shops. Exchange Bakery & Restaurant v. Rifkin, 245 N.Y. 260, 157 N.E. 130. If the defendant believes in good faith that the policy pursued by the plaintiff and by the shops united with the plaintiff is hostile to the interests of organized labor, and is likely, if not suppressed, to lower the standards of living for workers in the trade, it has the privilege by the pressure of notoriety and persuasion to bring its own policy to triumph. Exchange Bakery & Restaurant v. Rifkin, supra; Bossert v. Dhuy, 221 N.Y. 342, 117 N.E. 582, Ann.Cas. 1918D, 661."

■■ The limit of judicial authority to restrain a strike without impairment of the freedoms guaranteed by the several amendments to the federal constitution is to be determined by the lawfulness of the object aimed at and the manner in which the strike is conducted. If the object is within the scope of union activity, that is, reasonably related to wages, hours or other conditions of immediate employment and is lawfully and peaceably carried out and not attended with violence or other unlawful acts, it should not be subjected to judicial restraint. This principle, as we view it, is implicit in the guarantee of the Fourteenth Amendment to our federal constitution as an incident of freedom of speech, as lately declared by decisions of the United States Supreme Court. Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L. Ed. 1093; American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L. Ed. 855; Steiner v. Long Beach Local, supra.

■ Recent such decisions have somewhat trenched upon the soundness of earlier cases formerly regarded as authoritative and it is now the settled modern rule that such a strike may be lawfully supported by various forms of advertising, including peaceful picketing. "Dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution. * * * The safeguarding of these means is essential to the securing of an informed and educated public opinion with respect to a matter which is of public concern. It may be that effective exercise of the means of advancing public knowledge may persuade some of those reached to refrain from entering into advantageous relations with the business establishment which is the scene of the dispute. Every expression of opinion on matters that are important has the potentiality of inducing action in the interests of one rather than another group in society. But the group in power at any moment may not impose penal sanctions on peaceful and truthful discussion of matters of public interest merely on a showing that others may thereby be persuaded to take action inconsistent with its interests." Thornhill v. State of Alabama, 310 U.S. at pages 102, 104, 105, 60 S.Ct. at page 744, 84 L.Ed. 1093.

■ The right of workers to enforce what they honestly conceive to be their just demands regarding wages, hours and conditions of work when a controversy arises with their employer by means of a strike is so enmeshed with the right of free speech as construed in recent federal decisions that the right to strike and to picket are but facets of the general principle first above outlined, and to abridge either when of lawful object and lawfully executed could not be sustained. As observed, "members of a union might, without special au-

thorization by a state, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution." Senn v. Tile Layers Protective Union, 301 U.S. 468, 478, 57 S.Ct. 857, 862, 81 L.Ed. 1229. It would be but a hollow principle to say a union is free to advertise a labor dispute by picketing but may not strike to enforce its demands. Scofes v. Helmar, 205 Ind. 596, 187 N.E. 662, 664.

The Senn doctrine was later extended to apply to a labor controversy though not existing between employer and employee. A. F. of L. v. Swing, supra; Cafeteria Employees Union v. Angelos, 320 U.S. 293, 64 S.Ct. 126, 88 L.Ed. 58.

It was stated in the last cited case (Angelos) that, when picketing is peaceful, "to use loose language or undefined slogans that are part of the conventional give-and-take in our economic and political controversies—like 'unfair' or 'fascist'—is not to falisfy facts." 320 U.S. at page 295, 64 S.Ct. at page 127, 88 L.Ed. 58.

Both the Swing and Angelos cases contain authoritative pronouncements that in labor controversies concerning wages, hours and working conditions, the right of peaceful picketing to advertise a labor controversy cannot be taken away merely because in the course of the picketing there may have been episodic and isolated instances of abuse falling far short of violence. Of like import is the holding in Milk Wagon Drivers Union v. Meadowmoor Dairies, 312 U.S. 287, 61 S.Ct. 552, 556, 85 L.Ed. 836, 132 A.L.R. 1200, where it was said: "Right to free speech in the future cannot be forfeited because of disassociated acts of past violence."

█ The courts in thus speaking of the right of labor to strike and lawfully advertise its cause were not dealing with situations where there was combination or conspiracy to maliciously injure or where there were suggestions of attempted monopoly, unlawful coercion or intimidation, fraud, threatened violence, breach of the peace or remoteness of legal purpose of the union, etc. (cf. American Steel Foundries v. Tri-City Council, 257 U.S. 184, 210, 42 S.Ct. 72, 66 L.Ed. 189, 27 A.L.R. 360; Truax v. Corrigan, 257 U.S. 312, 327, 328,

337, 346, 42 S.Ct. 124, 66 L.Ed. 254, 27 A.L.R. 375; Milk Wagon Drivers Union v. Meadowmoor Dairies, supra; Union Pacific R. R. v. Ruef, C. C., 120 F. 102), for concededly judicial restraint is permissible in such cases as also where, though the aim be lawful, the strike is attended with real or threatened violence, force or coercion or conduct otherwise unlawful or oppressive, such as mass picketing or even peaceful picketing when "enmeshed with contemporaneously violent conduct which is concededly outlawed." For "utterance in a context of violence can lose its significance as an appeal to reason and become part of an instrument of force." Milk Wagon Drivers Union v. Meadowmoor Dairies, supra, 312 U.S. at pages 292, 293, 61 S.Ct. at page 554, 85 L.Ed. 836, 132 A.L.R. 1200. Cf., also, Thornhill v. State of Alabama, supra; Scofes v. Helmar, supra; Carlson v. People of State of California, 310 U.S. 106, 113, 60 S.Ct. 746, 84 L.Ed. 1104; American Steel Foundries v. Tri-City Council, supra; Nann v. Raimist, supra; Hardie-Tynes Mfg. Co. v. Cruise, supra; 132 A. L.R., note p. 1218 et seq., and cases there cited; Fashioncraft v. Halpern, 313 Mass., 385, 48 N.E.2d 1.

█ But as stated by Chief Justice Taft in the American Steel Foundries case, supra, "Each case must turn on its own circumstances." 257 U.S. 184, 206, 42 S.Ct. 72, 77, 66 L.Ed. 189, 27 A.L.R. 360.

We need to digress no further, however, to catalogue the various circumstances which might justify court intervention, since as we view the record they were not shown present in this case.

With this reference to the principles which we think will guide us to a correct solution of the disputed issues, we will proceed to a consideration of the two over-all questions which must be determined: First, whether or not the strike was lawful, viz., was for a lawful object; and second, was it lawfully conducted. We treat the propositions in order.

Briefly, the circumstances leading up to the strike may be thus summarized: Through the activities,—for a period of several weeks—of the two representatives, Hacker and Hardwick, most of the cafe

employees had joined the union and on behalf of these employees, Hacker and Hardwick called on Spiro Greenwood, who was acting for his partners in the matter, to negotiate for a contract relating to wages, hours and other working conditions of the employees and presented a written proposal as a basis for negotiation, explaining that "possibly there are several paragraphs that should not be there, but these are open for discussion." This was on September 4, 1946. Greenwood informed the two representatives that they (he and his partners) could not discuss the contract until after consultation with their attorney. The two representatives then left with the understanding that they would return the following Friday, September 6th, for an answer. Greenwood knew of this unionization of the cafe and during that period and the interim between the 4th and 6th as well, he and the headwaiter engaged in conversation with some of the employees and did other things which tended to indicate certain anti-union activities on their part, all of which was known to the union employees and their two representatives. Greenwood says that such was not his purpose but the circumstances could reasonably have been so interpreted by the union people, and on Friday when Hacker returned for Greenwood's answer in regard to the execution of the bargaining contract Greenwood still deferred his final answer; saying that his lawyer was leaving town and that he would have to have more time before giving a definite answer. In the course of this last stated conference, Hacker asked Greenwood to point out any objectionable features of the contract and Greenwood said he was objecting to the whole thing and that he would have to wait for his lawyer and that his lawyer was preparing a letter to each of his employees in regard to joining the union and in regard to declaring themselves on the proposition. Already having had the information of the aforementioned anti-union activities or of a situation which might reasonably indicate that efforts were under way to neutralize the union's endeavor to unionize the cafe, Hacker terminated his efforts to agree on a contract and in accordance with a previous understanding of the union employees, should the Greenwoods still defer their answer, the strike was called that day and pickets stationed on the sidewalk carrying placards inscribed "Greenwood's on strike for higher wages and union recognition. Hotel and Restaurant Employees Union Local No. 454, A. F. of L."

On the following day, September 7, 1946, on complaint of the plaintiffs, the court issued a temporary injunction enjoining the defendants from picketing the cafe and commanding them to cancel and call off the strike or from aiding or abetting in the maintenance of the strike "until they shall have failed to obtain an agreement with the complainants respecting wages, hours or working conditions of the complainants' employees * * * by arbitration and until further orders of the court." On final hearing, September 27th, after the taking of testimony, the court found and adjudged that "the calling of the strike by the respondent union * * * implemented by a picket line for the purpose of coercing and compelling complainants to sign said contract [the bargaining contract mentioned above] without their [cafe owners] having had a reasonable opportunity and privilege of conferring with counsel * * * to investigate the possibility of their being able to meet the requirements was, in the opinion of the court, an illegal act." As a result of these findings the temporary injunction was made permanent and the defendants were enjoined from (a) picketing or attempting to picket the cafe; (b) maintaining or attempting to maintain pickets at or near the cafe; (c) taking any steps to induce complainants' employees or any of them not to work for complainants; (d) hindering or interfering with such employees of complainants; (e) seeking in any way to disrupt the normal operations of Greenwood Cafe; (f) unlawfully interfering with any person seeking to lawfully transact business with the complainants; (g) were commanded to cancel and annul and call off the strike.

It thus appears that the theory of the injunction was that in calling a strike because of Greenwood's refusal to sign the proposed agreement or in fact to negotiate for any agreement, as the decree puts it, "until the respondents accord and extend to complainants a reasonable opportunity

to investigate any demands made upon them," was an illegal act, rendered the strike and the picketing unlawful and authorized the imposition of the all-inclusive injunction.

We entertain the opinion that the sweeping effect of the decree cannot be sustained under the proof, in the light of the governing authorities. Most of the activities enjoined clearly appear to have been within the orbit of labor activities sanctioned by overwhelming modern authority and protected by the federal constitution, as now construed by the United States Supreme Court.

█ That the attempt to unionize the cafe and procure from its operators a union contract was reasonably related to the employees' immediate employment and was a proper object is but one phase of the general principle already decided by this court in the McAdory case, from which we have quoted; and, being a proper object, it was within their right to use all lawful means to enforce their claims by fairly and honestly advertising their cause, including peaceful picketing.

█ It is argued with great force by distinguished counsel that the courts should assume the authority of dictating a reasonable waiting period before labor may lawfully initiate a strike resulting from such a controversy, but we cannot accord with the view. A regulation requiring arbitration or pronouncing strikes as unlawful, unless the employer shall have been given reasonable time to appraise the situation and the demands made on him, might, as argued, be most salutary under present-day conditions, but we are convinced the establishment of a regulation of that character is a matter exclusively for the legislature, where proper standards can be set to govern all cases, rather than for the courts to, by judicial fiat, expropriate, so to speak, an obvious legislative function by stipulating such a condition. Our research has failed to discover a case sustaining this theory as within judicial prerogative. This court has traditionally sought to adhere to the principle that we will not trench on legislative authority and we are persuaded that we should not now forswear this principle. However benign such a regulation might be, the duty and authority are not ours but rest with the legislature in that respect and for us to so legislate would, to our minds, not be condoned by modern jurisprudence.

█ We therefore think it sound to hold, under the facts presented, that the cafe employees, not bound by contract for a definite period and not, by agreement freely made, having given up such right (McAdory case, supra, 246 Ala. at page 14, 18 So.2d 810), had the right to strike and committed no unlawful act in so doing without waiting to see if the employment would give them an answer to their request, any more than would have the employers, had they elected to close the cafe without notice. As was said in National Protective Ass'n of Steam Fitters v. Cumming, 170 N.Y. 315, 63 N.E. 369, 372, 58 L.R.A. 135, 88 Am.St.Rep. 648, "they (employees) could have gone upon a strike without offering any explanation." We have found no case to support the contrary theory. The following authorities, some of which have already been noticed, in addition to those reported with the case, bear some analogy to support our own conclusion: National Protective Union of Steam Fitters v. Cumming, supra; Scofes v. Helmar, supra; Pittman v. Nix, 152 Fla. 378, 11 So.2d 791, 144 A.L.R. 1341; Greenwood v. Building & Trade Commission, 71 Cal.App. 159, 233 P. 823; National Labor Relations Board v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381; Welch v. State, 28 Ala.App. 273, 183 So. 879, certiorari denied 236 Ala. 577, 183 So. 886; Iron Molders' Union v. Allis-Chalmers Co., 7 Cir., 166 F. 45, 49, 20 L.R.A.,N.S., 315; Arthur v. Oaks, 7 Cir., 63 F. 310, 25 L.R.A. 414; New Jersey Painting Co. v. Local No. 26, 96 N.J.Eq. 632, 126 A. 399, 47 A.L.R. 384, 390; Carpenters' Union v. Citizens' Committee, 333 Ill. 225, 164 N.E. 393, 398, 63 A.L.R. 157, 168; Cohn & Roth Electric Co. v. Bricklayers', Masons' & Plasters' Local Union, No. 1, 92 Conn. 161, 101 A. 659, 6 A.L.R. 887; Henderson v. Coleman, 150 Fla. 185, 7 So.2d 117; Kemp v. Division No. 241, 255 Ill. 213, 99 N.E. 389, Ann.Cas.1913D, 347.

A further observation, we think, is in order. Had the court been authorized to make such a requirement, its enforceability here might be regarded as of doubtful tenableness. For whether or not a reasonable time had been given would depend on the circumstances and the conduct of the parties, and as heretofore pointed out, during the process of negotiation activities appeared to be working against the attempt to unionize and might have justified more precipitous action in calling the strike. See Restatement of the Law of Torts, supra, pp. 125, 137, §§ 785, 796; cf. Solvay Process Co. v. N. L. R. B., 5 Cir., 117 F.2d 83, 86; Sperry Gyroscope Co. v. N. L. R. B., 2 Cir., 129 F.2d 922, 927; N. L. R. B. v. Moench Tanning Co., 2 Cir., 121 F.2d 951, 953; International Ass'n of Machinists v. N. L. R. B., 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50; Heinz Co. v. N. L. R. B., 311 U.S. 514, 521, 61 S.Ct. 320, 85 L.Ed. 309; N. L. R. B. v. Link Belt Co., 311 U.S. 584, 588, 61 S.Ct. 358, 85 L.Ed. 368.

We have tried to illustrate the error of the decree in declaring the strike unlawful for the alleged failure of the strikers to accord plaintiffs more time to consider the unions' demands. This was where the decree was rested, but argument is made here that it can be saved for affirmance on the further ground that, allegedly, the contract contained illegal provisions rendering unlawful a strike to coerce its execution.

As stated, the decree was founded on a different premise, but if an answer is due, it will be noted, first, that no particular provision in the contract was insisted on by the union or the employees and both sides seemed to agree in the testimony that it was submitted as a bargaining basis only. In appraising the evidence the impartial mind could not but be impressed that the strike was precipitated as the combined result of the deferring tactics of Greenwood, genuine though his purpose may have been, and the suspicion of the employees and the union representatives of losing their cause by further delay.

Secondly, we do not interpret the proposed bargaining agreement as containing illegal provisions.

It is argued for appellee that the strike was one for a closed shop by reason of Article I of the proposed contract and that the closed shop is banned in Alabama. The writer construes Article I to be a stipulation for a union shop, because "a union shop is where the employer is permitted to employ a non-union worker, but such worker is required to join the union as a requisite to his continuing work; a closed shop is where the worker must be a member of the union as a condition precedent to his employment." Miners in General Group v. Hix, 123 W.Va. 637, 17 S.E.2d 810, 813; Teller, Labor Disputes, supra, § 97. Of course, a stipulation for a union shop is not unlawful in this jurisdiction. The trend of our cases is to the contrary. Badgett v. Department of Industrial Relations, 30 Ala.App. 457, 10 So.2d 872, certiorari denied 243 Ala. 538, 10 So.2d 880; Welch v. State, Ala.App., supra; McAdory case, Ala.Sup., supra.

The other Justices construe Article I as prescribing for a closed shop but the court is in unanimous accord that a closed shop is not outlawed in Alabama. The contention that Sections 8 and 9 of the so-called Bradford Act, General Acts 1943, p. 256, Code 1940, Pocket Part Supplement, Title 26, §§ 383, 384, have made illegal a contract calling for this type of union employment is, in our opinion, not sustainable. Manifestly these sections only denounce the imposition of restraint on one regarding his attitude toward affiliation with a labor organization by force, coercion, intimidation or by threats thereof, or by intimidation of or injury to his family. Their essence is not to ban a closed shop but to make unlawful interference, by the stated methods, with a person's freedom of choice in regard to such affiliation.

Nor do we think that §§ 57 and 103 of Title 14 and the aforesaid sections of the Bradford Act can be read together so as to ban the closed shop. All the provisions speak of the use of force, threats or intimidation or other improper or unlawful means and do not prohibit a requirement of union membership as a condition of employment so long as such means are not utilized to enforce the stipulation.

278

■ Likewise do we perceive no taint of unlawfulness in Article XIV, which provides for the check-off of initiation fees and initial dues of new employees, since obviously it is referable to incoming employees as they join the union.

■ A like construction of non-illegality is due Section II, permitting union officers to talk to union employees on the premises. This permission, though not specifically insisted on by the union, could, of course, be subject to abuse and, if so, subject then to judicial intervention, but it is clearly not illegal per se for one to come to a public place as a restaurant and talk business with one of the employees so long as it does not interfere with the business of the cafe or the rights of the parties involved.

Similar rationale answers the objection to other phases of the proposed agreement. No particular stipulation seems to have been insisted on and, while the employees did speak loosely of striking because Greenwood would not sign, it is clear the strike was inaugurated because he would not then agree to anything. Cf. Starr v. Laundry & Dry Cleaning Workers' Union, 155 Or. 634, 63 P.2d 1104.

■ It is finally argued the strike was not called in accordance with union regulations. If so, plaintiffs cannot claim equitable protection on such a premise. Exchange Bakery & Restaurant v. Rifkin, 245 N.Y. 260, 157 N.E. 130, 135; McAdory case, supra; Local Union No. 57 v. Boyd, 245 Ala. 227, 16 So.2d 705.

The second aspect of the case presents the question of whether or not the strike was lawfully executed. It does not appear the decree intended to restrain the picketing because unlawfully conducted, but rested on the unlawfulness, per se, of such conduct because of the illegality of the strike. In view of our conclusions above, this would seem to dispose of this aspect of the case.

■ As observed, peaceful picketing is protected by the First and Fourteenth Amendments to the Constitution of the United States guaranteeing freedom of speech (Thornhill v. State of Alabama, supra; Senn v. Tile Layers Protective Union, supra; Cafeteria Employees Union v. Angelos, supra; Bakery & Pastry Drivers v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L. Ed. 1178; American Federation of Labor v. Swing, supra; Carlson v. People of State of California, supra; Whitney v. People of State of California, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095; Cantwell v. State of Connecticut, 310 U.S. 296, 60 S. Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352; Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470; Schneider v. State of New Jersey, Town of Irvington, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155) and includes the right to peaceably persuade others of the righteousness of their cause. Bittner v. West Virginia-Pittsburgh Coal Co., 4 Cir., 214 F. 716; American Steel & Wire Co. v. Wire Drawers' & Die Makers' Unions, C.C., 90 F. 608; Pope Motor Car Co. v. Keegan, C.C., 150 F. 148; United Chain Theaters, Inc., v. Philadelphia Moving Picture Mach. Operators Union, Local No. 307, D.C., 50 F.2d 189; Music Hall Theatre v. Moving Picture Mach. Operators Local No. 165, 249 Ky. 639, 61 S.W. 2d 283; Crouch v. Central Labor Council of Portland, 134 Or. 612, 293 P. 729, 83 A.L.R. 193. We have pointed out that recent United States Supreme Court decisions have held that in isolated instances of abuse where the picketing is accompanied by trivial rough incidents and infrequent illegal acts not of a serious character, only the unlawful conduct may be enjoined and not the picketing altogether. Cafeteria Employees Union v. Angelos, supra; Milk Wagon Drivers Union v. Meadowmoor Dairies, supra; Re-Statement of the Law of Torts, § 815, p. 179. We are unable to say from the record before us that up to the time of the preliminary injunction the strike was unlawfully conducted or that there were any unlawful incidents in connection with the picketing. One witness did testify that some one "brushed his arm" when he tried to enter the cafe. Another said one of the pickets told him not "to go in there" and one of the proprietors testified that at times there were as many as ten pickets on duty (there appears to have been usually about six) and that at one time the pickets congregated at the entrance of the cafe. The court

appeared not to have determined and the record does not indicate that these were such acts as would so seriously affect the peace or produce such unlawful consequences as to justify enjoining the picketing altogether (132 A.L.R. n. 1218 and cases cited), or the limiting of the number of pickets to less than those on duty. American Steel Foundries v. Tri-City Council, supra; Milk Wagon Drivers Union v. Meadowmoor Dairies, supra. The conduct of the picketers, of itself, appears not to have been unlawful and under our federal decisions, if such incidents as above described were merely isolated and episodic, not tending toward threatened violence, a breach of the peace, coercion, intimidation or other unlawful conditions, they did not taint the entire endeavor as unlawful or permit the injunctive process to restrain all picketing.

As stated, the court rested the injunction elsewhere and without a finding on this different question there would be no warrant for our affirming any of the sections of the injunction.

Mr. Justice BROWN and the writer are of the opinion the decree should be reversed and the cause remanded. The other justices entertain the view that the decree should be reversed and a decree here rendered disposing of the case. Accordingly, the decree is reversed and one is here rendered dismissing the bill. Otherwise, all the Justices concur.

Reversed and rendered.

All the Justices concur as above noted.