165 So.2d 113

**LOCAL #612, INTERNATIONAL BROTH-ERHOOD OF TEAMSTERS, etc., et al.**

**v.**

**BOWMAN TRANSPORTATION, INC.**

**6 Div. 864.**

Supreme Court of Alabama.

May 7, 1964.

Rehearing Denied June 18, 1964.

**564**

Corretti & Newsom, Birmingham, and Hawkins & Rhea, Gadsden, for appellants.

Maurice F. Bishop, Birmingham, for appellee.

MERRILL, Justice.

Appellants were adjudged to be in civil contempt on March 27, 1962, and from that decree they appealed; and they also sought review on a writ of certiorari, which writ was issued by this court on June 14, 1962.

Appellee had sought a temporary injunction in November, 1961, and on November 30, 1961, a "consent" decree was issued enjoining Local Unions Nos. 612 and 991, "their members, agents, servants, officers, employees and all persons acting in concert with them," from acts of violence toward appellee, and it was violations of this decree that prompted the contempt decree of March 27, 1962.

Appellee filed a motion to dismiss the appeal and the writ of certiorari on January 21, 1962, and its brief in support of the motion was not answered by appellants, either by supplemental brief or in oral argument. The grounds for the motion are that contempt proceedings are not reviewable by appeal, and at the time the petition for certiorari was filed and granted by this court, all the appellants were then in jail under the order citing them for contempt and, therefore, certiorari is not the proper remedy.

Appellants concede in brief: "It seems to be pretty well established in this state that the remedy for review of a contempt proceeding is by certiorari if the party is not in prison, or by habeas corpus if the party is in prison (Worley v. Worley, 100 So.2d 18, 267 Ala. 71 and cases cited)." But they point out that the decree did more than adjudge them in contempt because the final decree enjoined all picketing by them. Their brief continues: "Thus, it can be readily seen that the decree of March 27, 1962, is not only a contempt decree but also is a decree of injunction which is appealable under the laws of this state."

Appellants' position is supported by the case of Preskitt v. Chandler, 214 Ala. 278, 107 So. 750. There, Preskitt was enjoined from cutting timber on certain lands. He was shown to have violated the decree and was cited for contempt and temporarily enjoined. He filed a motion to dissolve the temporary injunction. A decree was entered "overruling the motion to dissolve the temporary writ of injunction and adjudging D. O. Preskitt in contempt." On appeal, appellees sought to have the appeal dismissed because no appeal lies from a decree adjudging one in contempt of court. It was held that the appeal would not be dismissed because an appeal does lie from a decree overruling a motion to dissolve an injunction.

■■ We agree with appellants that the part of the decree enjoining all picketing is reviewable on appeal and we are going to decide that aspect of the case. But we note that this court, in Preskitt v. Chandler, supra, did not review or decide the contempt aspect of the case and we also are constrained to exclude the contempt feature of the decree from our review for the following reasons: (1) Contempt proceedings are not reviewable by appeal, Jones v. Jones, 249 Ala. 374, 31 So.2d 81; Wetzel v. Bessemer Bar Ass'n, 242 Ala. 164, 5 So. 2d 722; Ex parte Dickens, 162 Ala. 272, 50 So. 218; Easton v. State, 39 Ala. 551, 87 Am.Dec. 49; (2) The proper method of review is by certiorari if the party is not in prison, or by habeas corpus if the party is in prison, Ex parte Enzor, 270 Ala. 254, 117 So.2d 361; Worley v. Worley, 267 Ala. 71, 100 So.2d 18; Wetzel v. Bessemer Bar Ass'n, 242 Ala. 164, 5 So.2d 722.

These rules of review are well established and we think they ought to be followed, especially when appellants recognize and cite them. Here, appellants were in jail at the time the writ of certiorari was granted and an order or decree of contempt is not revisable or reviewable by this court either by appeal or certiorari when the party is in jail. Authorities supra.

It follows that the only matter left for our consideration is that feature of the decree listed in par. 8 of the decree:

"All picketing by members of Local 612, or by other persons under the jurisdiction thereof, of complainant's premises in Alabama, or by any other person at their instance or for their benefit, is hereby enjoined and prohibited within the State of Alabama, pending rendition of final decree in the main cause, unless otherwise ordered by the Court in the meantime. And the writ of injunction heretofore rendered is modified and amended to that effect in open Court."

Assignments of error 34 and 48 charge error in the enjoining of all picketing.

■ Peaceful picketing is not to be enjoined in Alabama unless it is done in an unlawful manner or for an unlawful purpose. Baggett Transportation Co. v. Local No. 261, etc., 259 Ala. 19, 65 So.2d 506; Hotel & Restaurant Employees, International Alliance v. Greenwood, 249 Ala. 265, 30 So.2d 696; Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093.

■ But all picketing may be enjoined where unlawful picketing has been continued, and where violence and intimidation have been used, especially where, as here, acts of violence have already been enjoined. We quote from a few authorities where all picketing was enjoined. In Milk Wagon

Drivers Union, etc. v. Meadowmoor Dairies, Inc., 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836, 132 A.L.R. 1200, the court said:

"* * * And acts which in isolation are peaceful may be part of a coercive thrust when entangled with acts of violence. The picketing in this case was set in a background of violence. In such a setting it could justifiably be concluded that the momentum of fear generated by past violence would survive even though future picketing might be wholly peaceful. So the supreme court of Illinois found. We cannot say that such a finding so contradicted experience as to warrant our rejection. Nor can we say that it was written into the Fourteenth Amendment that a state through its courts cannot base protection against future coercion on an inference of the continuing threat of past misconduct. Cf. Ethyl Gasoline Corp. v. United States, 309 U.S. 436 [60 S.Ct. 618, 84 L.Ed. 852].

"These acts of violence are neither episodic nor isolated. Judges need not be so innocent of the actualities of such an industrial conflict as this record discloses as to find in the Constitution a denial of the right of Illinois to conclude that the use of force on such a scale was not the conduct of a few irresponsible outsiders. The Fourteenth Amendment still leaves the state ample discretion in dealing with manifestations of force in the settlement of industrial conflicts. * * *"

In Hughes v. Superior Court of California, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985, the court said:

"* * * Picketing is not beyond the control of a State if the manner in which picketing is conducted or the purpose which it seeks to effectuate gives ground for its disallowance. [Citing cases]. 'A state is not required to tolerate in all places and all circumstances even peaceful picketing by an individual.'"

In International Brotherhood of Teamsters, Local No. 695 v. Vogt, Inc., 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347, the court reviewed earlier cases and stated:

"This series of cases, then, established a broad field in which a State, in enforcing some public policy, whether of its criminal or its civil law, and whether announced by its legislature or its courts, could constitutionally enjoin peaceful picketing aimed at preventing effectuation of that policy."

In Nann v. Raimist, 255 N.Y. 307, 174 N.E. 690, 73 A.L.R. 669, Chief Justice Cardozo said:

"'Where unlawful picketing has been continued, where violence and intimidation have been used, and where misstatements as to the employer's business have been distributed, a broad injunction prohibiting all picketing may be granted.' * * *

* * * * * *

"* * * One chance the defendant had already been given. It had defied the mandate and abused the privilege. How many more chances was it to have before the court could intervene? * * * The injunction is sustained upon the theory that the defendant, having been permitted to picket subject to conditions, violated those conditions, and in contempt of the existing mandate picketed with violence and with falsehood, spreading terror with a strong hand and a multitude of people. In the judgment of the trial court, 'the [defendant's] course of conduct * * * has been such as to indicate the danger of injury to property if any picketing whatever is allowed.' * * *."

This has been followed and cited in later state and federal cases.

The trial court in the instant case stated in part as follows:

"This injunction was granted by consent on December 1, 1961, at 12:18

p. m. It restrained both sides of the main cause mutually from violence. Teamster Local 612 had opened this physical warfare by mass violence before the entrance to the Gadsden terminal on the first day of the strike to-wit: November 4, 1961.

"And immediately following grant of the injunction, such violence continued not one whit abated, and even into the closing days of this hearing, and may well be continuing even as this decree is being drafted.

"A concerted and conspiratorial program of terror has been conducted upon the public highways of this State. Very deadly weapons such as military rifles and sawed-off shot guns have been utilized, and brutal personal assaults perpetrated. The threats, blockage of access to streets, destruction of property, and mass violent intimidations pale almost into insignificance in comparison to the numerous guerrilla-type attacks with the actual weapons of war and assassination.

"No citizen who believes this State is, or should be, a place where law and order are to be respected and enforced, could read this record without astonishment and grave dismay. Certainly this Court cannot call to mind such a case ever in this State, nor elsewhere in recent years.

"The charges and evidence disclose many acts which might be serious felonies and misdemeanors. Such matters are not for this Court to deal with as such in this equity (civil) proceeding, but are for the prosecution officers, juries grand and petit, and Courts of the respective counties where venue may be laid.

"Though a most solemn writ running in the name and by authority of the State of Alabama has been outrageously flouted, this is not a criminal proceeding. In the opinion of the Court, it is primarily to conserve the rights of a lawful business from a continuing and irreparable damage, and not to simply vindicate judicial authority or court process. It is remedial, prospective, and preventive in nature, primarily, and punitive only incidentally and secondarily.

"Time and space do not permit detailed recital of these outrages and complainant-cross-respondent is not altogether blameless in the matter.

"Most reluctantly the Court is compelled to now proscribe pendente lite all picketing, stationary or transitory, peaceful or otherwise. It is enmeshed with violence and blocking of streets, furnishes a means of surveillance over truck movements, and whether intentionally or not constitutes a focus for occasions of violence by non-peaceable individuals, regardless of the fact that the authorized and placard-carrying pickets themselves are guilty of no violent misconduct. Respondents' strike and grievances may be publicized in other ways.

"Though the proceeding is civil, the court has endeavored to accord to the parties some of the defensive safeguards provided in criminal cases. As to degree of proof, while reasonable satisfaction would be sufficient, the Court is convinced beyond reasonable doubt and to moral certainty of most of the violations charged, and under the circumstantial evidence, to the exclusion of any rational hypothesis consistent with innocence."

These findings were amply supported by the evidence contained in a record of twelve volumes and forty-three hundred pages, in a hearing lasting over nine weeks, and we find no error in that part of the decree enjoining all picketing until further orders of the court.

Assignments of error 40, 43, 44, 45, 49, 51, 54 and 57 raise the question of preemption, that is, that a state court cannot enjoin picketing in a labor management

568

controversy involving an employer engaged·in interstate commerce as appellee unquestionably is.

The authorities cited under our discussion of assignments 34 and 48 hold adversely to appellants. We think it sufficient to cite only one other case, that of International Union, United Automobile, etc., Workers v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030, where the alleged and proven violence was not nearly so aggravated or severe as in the instant case, in which the court said:

> "At the outset, we note that the union's activity in this case clearly was not protected by federal law. Indeed the strike was conducted in such a manner that it could have been enjoined by Alabama courts. Youngdahl v. Rainfair, Inc., 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151; United Auto, Aircraft and Agr. Implement Workers v. Wisconsin Employment Relations Board, 351 U.S. 266, 76 S.Ct. 794, 100 L.Ed. 1162."

There is no merit in the contention that the state court had no power to enter this controversy by reason of pre-emption. This position is greatly weakened by the fact that appellants agreed and consented to the original preliminary injunction of November 30, 1961, and the pre-emption theory was not raised until they were charged with violations of the consent decree.

Having treated all of the matters properly before us on appeal, and finding no reversible error, the decree of the lower court is affirmed as to those features of the decree which were appealable.

We call attention to the fact that the decree is not so final as to be permanently dispositive of the case.

The ninth and final paragraph of the decree reads:

· "Jurisdiction of this entire cause and ·subject matter· under the original bill and the instant petition and cross-petition, and of all parties is expressly reserved and retained for all such other, further, different and supplemental orders and decrees as may be necessary or appropriate in the premises."

This reservation permits appellants to have modification or alteration of any parts. or conditions of the decree when they are able to convince the trial court that they should be made.

That part of the decree which was appealable is affirmed and the review here sought by the writ of certiorari is dismissed.

Affirmed in part and certiorari dismissed.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.