This is an appeal from the grant of a preliminary injunction based upon circumstances which arose out of a labor dispute. We reverse.
The plaintiff operates a plant in Aliceville. Some of its employees began a strike against the company during the early morning hours of September 13, 1976. That same day the plaintiff petitioned the Pickens County Circuit Court for a temporary restraining order, naming the International Molders 
Allied Workers Union, AFL-CIO-CLC, and H.H. Key, its special representative, as defendants. After describing the defendant union as the certified employees collective bargaining representative, this petition alleged that the defendants had called the strike and had "established pickets at all of the entrances at Plaintiff's Aliceville facilities." These, it alleged, at various times on September 13 had been joined with "other persons" to aggregate thirty, and to congregate on the Baptist Line Road where they blocked ingress and egress at the plant. Some pickets, *Page 1387 
it alleged, were standing on the road so that an employee had to turn his car around in order to come in another entrance to work. It also alleged "other incidents of threats of violence, mass assembling, trespass, blocking ingress and egress" to have occurred. In support of these allegations, plaintiff submitted the affidavits of three persons, but as we later explain, only the affidavit of Theodore Moore is relevant to this decision.
Moore's affidavit recited that he had been stopped by a group of eight or nine people as he was turning his car into the company property. He recognized these people as company employees, and "many" of them were "telling me in a loud voice not to go to work but to join them on the picket line." A "number" of them "said if I knew what was good for me I would not go to work at Aliceville Veneers," or words to that effect. They also blocked his path so that he had to use another entrance to the plant property.
The petition for a temporary restraining order did not certify, as Rule 65 (b) mandates, that the petitioner's attorney had made any effort to give notice to the opposing party, or set out any reason why notice should not have been required. Nor was any security obtained. It did allege that the defendants' acts violated Title 26, § 385, Alabama Code.
The trial court issued the temporary restraining order at 8:00 p.m. on September 13, 1976. It set the hearing for a temporary or permanent injunction for September 22, 1976. In issuing the order, that court found that injuries had already occurred and that "immediate and irreparable injuries to persons and property" would be done without the order. It ordered the defendants and all other persons acting in concert with them to refrain from:
(a) Mass. picketing at or near the entrances, or from obstructing with the free ingress and egress at the plant;
(b) Preventing or attempting to prevent any person or vehicle from entering or leaving the facilities through violence, force, massing, picketing, threats, abusive or coercive language, or by any other means;
(c) Loitering or being unnecessarily near the points of ingress or egress of the plaintiff's facilities;
(d) Maintaining more than two pickets at each of the plaintiff's two entrances, and requiring that they be in motion, and spaced not less than twenty feet apart so as not to interfere with ingress and egress;
(e) Restricting all other picketing to the public road adjacent to the plant but not within 200 yards of each entrance;
(f) Using abusive or intimidating language to any person attempting to enter or leave plaintiff's premises;
(g) Inflicting or threatening to inflict damage or injury to plaintiff or its agents, employees, or their families;
(h) Threatening, intimidating, coercing, harassing or interfering with plaintiff, or its agents, employees, or their families;
(i) Following plaintiff's agents, employees or their families;
(j) Interfering with plaintiff's employees' right to engage in their lawful vocation.
In section three the trial court ordered:
 The Sheriff and any other duly authorized police officer who witnesses a violation of this Order by any person shall forthwith arrest such person and bring him before me.
This order was extended by agreement of the parties until October 4, without prejudice to the defendants' rights.
On October 1, 1976 the plaintiff filed an amended petition for a temporary restraining order, preliminary injunction, permanent injunction, and damages. This petition parroted the earlier petition except that it added the affidavits of Jessie Bonner and Ollie May Lewis (neither of whom testified at the hearing later) and it alleged that
. . . the plaintiff will not be able to fill orders on time and will thereby suffer immediate and irreparable injury, loss, or damage to its business and reputation in the business community as a supplier of wood and wood products. *Page 1388 
Thereafter, the plaintiff filed its motion for a preliminary injunction, adopting the allegations of its earlier petition, and alleging that the defendants and those acting in concertwith them had violated the restraining order by mass picketing, by threatening plaintiff's employees, and by threatening the lives and safety of plaintiff's employees to keep them from working. Plaintiff alleged that serious injury and damage would be caused plaintiff by a denial of the preliminary injunction. On that same day the defendants moved to dissolve the temporary restraining order for noncompliance with Rule 65 (b)(1) and (c), ARCP This motion was supported by an affidavit of Henry H. Key, a co-defendant and a special representative of the defendant union. He stated facts which tended to establish that his identity was well known to the plaintiff, its manager, its Atlanta lawyer, and that plaintiff or its representatives could have contacted him without difficulty in connection with the petition for the temporary restraining order.
Apparently this motion was not acted upon; as we have noted earlier, the T.R.O. was extended by agreement.
When the plaintiff's motion for the preliminary injunction was heard, the plaintiff introduced the testimony of Robert Gibson, Theodore Moore, Bobby John Windham, Willie Lee Bonner, and H.H. Key.
Robert Gibson testified that he was working for Aliceville Veneers when the strike began about three weeks before, and that he was stopped by someone only on the evening he was leaving work, but after that no one said anything to him. The one time he was stopped was by Willie Seay at the forks of the road where the racket was going on. They exchanged a "Hi," and Seay said "don't go back to work," and "I realize you have a family." Gibson then drove his car away. Nobody bothered himbefore or since.
Theodore Moore was stopped by someone on the road as he went to work on September 13; that person said "don't come in[,] pull aside and come on over here." It looked like about fifteen or twenty people there on the road at the turnoff to the plant, on Baptist Line Road. All of them worked at the mill. He went around to the other road and went into the mill, although the road was passable and unobstructed. As he was pulling off, "some of them said if you know what is good for you, you will stay here." Since that day no one had said anything to him orthreatened him.
Next, Bobby John Windham, a deputy sheriff, testified that he was at the plant during the first week of the strike. He overheard Willie Seay say something to a plant employee coming to work. Seay was about ten feet off the main highway at the mill, and told the man that he "would pull the masonic sign off his car if he went in;" "did you know you had a family at home," and "you know something could happen to them while you are out here working." He knew that Willie Seay did not work at the Aliceville plant, but at Tuscaloosa somewhere. He did not arrest Seay. Windham added that during the past week he had seen groups of employees on strike within two hundred yards of the plant. On cross examination, Windham related that he had arrived at the plant about 8:00 (a.m.) on the first day of the strike, accompanied by Leon Morris, a night watchman for Aliceville Veneers. That day there were about three or four deputies around the plant. He and the sheriff arrived about the same time, and other deputies, two or three, were there on and off, and Aliceville police passed up and down the road. From the beginning of the strike there was at least one deputy sheriff's car assigned at the plant, sometimes more than one. He observed no fights or threats.
Willie Lee Bonner had a conversation with Willie Seay when she was going to work on the second day of the strike. She was at the entrance to the plant in the fork of the road; as her son drove in someone "hollered hay [sic], stop and he stopped."All the workers were standing in a group to one side of theroad. Seay came up and said, "Miss Bonner, why do you keep on going in there to work, why don't you do us a favor?" She replied "Man I got to live," *Page 1389 
and he replied, "so is us." She then said, "Yea, well my son said don't you know that this is going to be another day." He said, "don't you know there is going to be another day," and I said, "So," and I said "drive on son." Seay spoke like if she "kept going in there something was going to happen. That is the way I got the feeling." Nobody said anything to her after thatsecond day.
H.H. Key identified himself as special representative of the International Molders Allied Workers Union. He testified that Willie Seay was an employee of the local union of the State of Alabama but not an employee of the International Union. They are, he explained, separate unions although Seay's union is affiliated with the International. Key did not give orders to Seay who worked for a local with an office in Tuscaloosa, but he represents various plants.
Following this testimony, plaintiff also offered only thepreviously filed affidavits of those whose testimony was alsointroduced, that is, the affidavit of Theodore Moore. The court, following arguments, granted the preliminary injunction, stating, inter alia, "We don't think we will have too much trouble there if we can keep these outside agitators out of here . . ." followed by a reference to Mr. Seay. It is unclear whether or not this was a factual finding that Mr. Seay was not a representative of the defendant union but acting on his own initiative.
The defendants pose three issues for our review:
(1) Whether the plaintiff met its burden of proving irreparable injury to its property in order to justify equitable intervention;
(2) Whether plaintiff pleaded and proved sufficient facts to justify the issuance of a preliminary injunction;
(3) Whether there was sufficient evidence of violence, or threatened violence, or mass picketing which unlawfully interfered with the plaintiff's business to justify the issuance of the preliminary injunction. These issues are so closely akin that they may be condensed into one question: Whether there was sufficient evidence upon which the trial court could issue the preliminary injunction.
We note from the record that the strike itself ended, and all picketing ceased, on February 13, 1977. By virtue of these facts the plaintiff has moved this Court to dismiss this appeal and dissolve the injunction on the ground of mootness. The plaintiff's motion must be overruled, however. Since we have found that the issuance of the injunction was inappropriate, there remains the question of the plaintiff's liability to the defendants on plaintiff's bond for costs, damages and reasonable attorneys fees.
There is no contention by the defendants that state action has been pre-empted by federal legislation, preventing the exercise by our state court of its injunctive power in such a dispute. That issue has been settled in favor of the state's power. Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736,84 L.Ed. 1093 (1940) ("The power and the duty of the State to take adequate steps to preserve the peace and to protect the privacy, the lives, and the property of its residents cannot be dcubted."); Baggett Transportation Co. v. Local No. 261,259 Ala. 19, 65 So.2d 506 (1953).
In reviewing the action of a trial court which has granted an injunction, we do not overlook the presumptions attendant to such a court's factual findings, Barnett v. Millis, 286 Ala. 681, 246 So.2d 78 (1971), nor the discretion reposed in determining whether to grant the injunction. Fowler v. Fayco,Inc., 290 Ala. 237, 275 So.2d 665 (1973). We recognize the difficulties confronting a trial court when called upon to weigh the constitutional rights and legitimate aims of labor organizations and their members against the interests of employers and others with whom these may conflict. It should be neither unexpected nor surprising that our own resolutions of those conflicting interests may differ, as they do in this case, as we perform our duty to explore the basis for the injunction granted here, for perhaps in these cases as in no others, the clashes of legal aims and legitimate *Page 1390 
interests frequently are incapable of being sharply distinguished, making judicial solutions arduous. Nevertheless, the injunctive process is a power to be exercised sparingly,Surratt v. N.L.R.B., 5 Cir., 463 F.2d 378 (1972); Bass AnglerSportsman Society v. U.S. Steel, D.C., 324 F. Supp. 412 (1971), and rarely granted on interlocutory applications, the exception being that:
. . . "the right of complainant must be clear and unmistakable on the law and the facts; and there must exist an urgent and paramount necessity for the issuing of the writ in order to prevent extreme or other serious damage which would ensue from withholding it." . . . [City of Decatur v. Meadors, 235 Ala. 544, 546, 180 So. 550 (1938)] (Emphasis supplied.)
In situations arising out of labor disputes, injunctions have been issued following obstructions of entrance to a building, accompanied by physical force, Taggart v. Weinacker's, Inc.,283 Ala. 171, 214 So.2d 913 (1968), and for interference with the right of one to conduct his business, American Radio Ass'nv. Mobile S.S. Ass'n, 291 Ala. 201, 279 So.2d 467 (1973). Even picketing, peaceful in itself, has been found a proper subject for such judicial control when accompanied by coercive or intimidating conduct threatening personal and property interests not capable of being protected by ordinary legal remedies. Local # 612, Int. Bro. of Teamsters v. BowmanTransp., Inc., 276 Ala. 563, 165 So.2d 113 (1964). The necessity for immediate injunctive protection to prevent irreparable harm is one reflection of the reluctance of a court possessing equity powers to determine either abstract questions or future rights. American Federation of State, C. M. Emp. v.Dawkins, 268 Ala. 13, 104 So.2d 827 (1958).
In considering the propriety of this preliminary injunction, we must first point out that the earlier issuance of the temporary restraining order, and the affidavits supporting the petition seeking it, cannot be considered as creating any presumption favoring the subsequent grant of injunctive relief. Rule 65 (b), ARCP, does not permit an ex parte T.R.O. without a certification in writing to the trial court showing the efforts, if any, made to give notice to the adversary, accompanied by reasons supporting his claim that notice should not be required. The plain language of this rule assumes that notice is prima facie required and is intended to allow the trial court a studied opportunity to weigh the effect of an absence of notice in deciding to grant or refuse such extraordinary relief. In addition, Rule 65 (c) prevents such an order ("no restraining order . . . shall issue") without bond or other security. Neither of these requirements was met. Both were subjects of the defendants' motion to dissolve which was not acted upon, apparently because the parties agreed to continue the T.R.O. to October 4. It does not appear from the record that the motion was called to the court's attention on the day of the hearing, October 4, and no error concerning its issuance is claimed on appeal. Nevertheless, the validity of the later injunction is not to be governed by the existence of the temporary restraining order which, had the motion been insisted upon, would have been subject to dissolution for the deficiencies identified. Rule 65 is procedural, not substantive. 7 Moore's Fed.Prac., par. 65.03[1](3). The temporary injunction must be weighed by its own pleading and proof.
In gist, the plaintiff alleged that the defendants:
(1) called the strike;
(2) established pickets at all entrances to plaintiff's facility;
(3) that these pickets, with others, all numbering thirty, congregated to block ingress and egress at that plant;
(4) had committed other incidents of threats of violence, mass assembling, trespass, blocking of ingress and egress, threatening the lives and safety of plaintiff's employees to keep them from working; and
(5) caused plaintiff to be unable to fill orders on time.
The evidence offered in support of these allegations falls short of establishing them. *Page 1391 
Robert Gibson was stopped only one time, as he was leaving
work, and that occurred on the first day, September 13, which was twenty-one days before the hearing. No one said anything to him after September 13. Willie Seay, the person who said to him, "don't go back to work," was not shown to have been an officer or a member of this union, or an employee; in fact the plaintiff's evidence is to the contrary. Seay's statements to Gibson and the other employees, e.g., Willie Lee Bonner, could not be attributed to the defendants. While it was necessary for the plaintiff to show that the union in some active way had made itself a party to the strike, cf. United States SteelCorp. v. United Mine Workers of America, 5 Cir., 519 F.2d 1249
(1975), if Seay's conduct was to be attributable to the union, evidence should have been introduced showing some authority to act for the union, or ratification of his acts. N.L.R.B. v.Urban Telephone Corp., 7 Cir., 499 F.2d 239 (1974); NorthAmerican Coal Corp. v. Local # 2262, U.M.W. of America, 6 Cir.,497 F.2d 459 (1974); Vulcan Materials Co. v. United SteelWorkers of America, 5 Cir., 430 F.2d 446 (1970).
Plaintiff's evidence did not establish that any employee blocked ingress and egress from the plant, or that mass picketing occurred. Gibson left without serious incident. Moore and Bonner went to work. At the most, the way was only partially blocked. Additionally, it was not proved that all plant entrances were picketed. For that matter the evidence does not establish the total number of plant entrances, but even so, Moore and Bonner did not mention the presence of pickets at other entrances, but only those at the entrance near the Baptist Line Road.
Considering the allegations of other threats to the lives and safety of plaintiff's employees, we note that Moore was the only witness who did not identify these as having been made by Seay. Moore did not describe the effect of these threats upon him, if they were threats, but it is significant that he was not deterred from working, and apparently he went undisturbed thereafter. These verbal abuses fall short of being demonstrations of impending violence and threats to personal safety. They appear, instead, to have been only "episodic and isolated instances of abuse falling far short of violence."
. . . [t]he right of peaceful picketing to advertise a labor controversy cannot be taken away merely because in the course of the picketing there may have been episodic and isolated instances of abuse falling far short of violence. . . ." Hotel Restaurant Employees v. Greenwood, 249 Ala. 265, 274, 30 So.2d 696, 701 (1947).
There was a total failure of evidence on the plaintiff's inability to fill orders on time.
Finally, the evidence does not disclose the need for an injunction on October 4, 1976, as required by City of Decaturv. Meadors, supra. Every witness whose affidavit was introduced and who testified, either pointed out the absence of any difficulty after the first or second day of the strike, or did not refer to any such difficulty. The deputy sheriff himself established the presence of peace officers on the scene from the first day of the strike, and even on the first day, when most if not all the supposed threats took place, he observed none, and made no arrests.
We conclude, therefore, that under this state of the evidence the findings and conclusions of the trial court were palpably wrong. Accordingly, the decree of the trial court granting the preliminary injunction is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, FAULKNER and SHORES, JJ., concur.
 *Page 91